THE STATE ex rel. T. J. DOUGLAS, Collector of the Revenue, for Benefit of DRAINAGE DISTRICT NUMBER FOUR OF DUNKLIN COUNTY, Appellant, v. C. C. REDMAN.

Division One, March 30, 1917.

1. DRAINAGE DISTRICT: Additional Assessments to Meet. Bonds: Power of County Court. A drainage district organized under the County Court Act of 1905 and previous acts has no power, even though the benefits reported were in excess of the assessments and the aggregate assessments were less than the bond issue, to subsequently increase the assessments so as to raise enough money to pay the bonds and interest in full as they accrue, but under the then statute exhausted its powers when it made its first assessment.

2. ——: ——: ——: Subsequent Statute Giving Power: Effect on Meaning of Prior Statute: Legislative Construction. Even if it be true that the Act of 1913, Laws 1913, pp. 274, 281, made specific provisions for an additional levy of assessments to pay debts of a drainage district and such act be considered a legislative construction to the effect that no such power previously existed, that would be only persuasive, and the power to levy additional assessments must still be found in the previous law under which the district was organized, for the Act of 1913 is not retroactive.

3. ——: ——: Final Judgment: Reopening. The Act of 1905, Laws 1905, pp. 185, 187, contemplated that the charges against all the tracts of land in the drainage district organized in the county court would be large enough to pay the costs of the improvement, including the bonds; but it also contemplated but one action by the court, and that in said action, after the report of the viewers and engineers and its modification upon exceptions filed by land owners, the court's order sustaining the report as modified would become a final judgment, unless appealed from and reversed; and being final, whether the amount was too small or too large, it was

270 Mo.—30

still a finality as to the land owner, and could not be corrected or the assessments increased years afterwards when it was discovered that the assessments were not equal to the bonds issued and will not yield enough money to pay the bonds. The law contemplated but the one action by the county court.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker,* Judge.

AFFIRMED.

*Fort & Zimmerman, Ely, Pankey & Ely* and *Oliver & Oliver* for appellant.

(1) The defendant was not entitled to a separate or special notice of the filing of the petition for the increase of the assessments on his lands as made in the county court order of April 29, 1912. Defendant having been made a party in the beginning, he was in court at all times and for all purposes, so far as this district was concerned. State ex rel. v. Wilson, 216 Mo. 282; State ex rel. v. Bates, 235 Mo. 287; State ex rel. v. Young, 255 Mo. 635; Barnes v. Construction Co., 257 Mo. 195; Page and Jones, Taxation by Assessment, sec. 738, note 9; People v. Chapman, 127 Ill. 392; Stone v. Drainage Dist., 118 Wis. 399. (2) The county court had ample authority to increase the assessments on the lands within the district. Especially so when the total assessments did not equal the benefit. Sheridan v. Fleming, 93 Mo. 321; State ex rel. v. Holt County, 135 Mo. 545; State ex rel. v. Bates, 235 Mo. 293; Page and Jones, Taxation by Assessment, secs. 954-955; State ex rel. v. Holt County, 136 Mo. 474; Morrell v. Drainage Dist., 118 Ill. 139; Lursk v. Chicago, 211 Ill. 190. (3) Interest on the assessment is no part of the assessment and should not be considered in determining whether the assessment exceeds the benefit. It is conceded that the assessments, exclusive of interest, do not exceed the benefits in the case at bar. Sec. 8316, R. S. 1899; Sec. 5622, R. S. 1909; Laws 1905, p. 187; Sec. 5596, R. S. 1909. It is elementary that interest

on an obligation is never included in determining whether the obligation is of a sufficient amount to confer jurisdiction on any tribunal where that tribunal's jurisdiction depends upon the amount involved. (4) The drainage statutes of this State must be liberally construed and the full intent of the Legislature read into them. State ex rel. v. Bugg, 224 Mo. 554; State ex rel. v. Bates, 235 Mo. 288.

*Bradley & McKay* for respondents.

(1) If the facts as disclosed in the cases cited by appellant in support of his contention under the first assignment of error were similar to the facts disclosed by the case at bar, then respondent admits that no additional notice would be necessary before making the order placing additional taxes upon respondent's lands, but in each of those cases cited the facts are very different from the facts in the case at bar. (2) The county court was without jurisdiction to make its order of April 29, 1912, readjusting and raising the amount of taxes against defendant's lands for said year and all subsequent years thereafter up to and including the year 1924. (a) County courts are creatures of the statutes and have no jurisdiction except such as are delegated to it by the statute. Jefferson County v. Cowan, 54 Mo. 234; Eaton v. St. Charles County, 8 Mo. App. 177; Miller v. Woodward, 8 Mo. App. 167; Shell v. Lelan, 45 Mo. 289; Smith v. Haverath, 53 Mo. 88. (b) The county court being a creature of the statute with only such jurisdiction as the statute confers on it and there being no statute to warrant it to readjust and reassess the taxes, raising the amount from $59 to $115.56 for the year 1912 and succeeding years to and including 1924, its acts are void, even in a collateral attack, where the whole record, as in this case, shows the court to be without jurisdiction to act. (c) Article 4, chap. 122, R. S. 1899, is a separate scheme within itself for the drainage and reclamation of wet and overflowed lands and is not dependent upon any other portion of the statute.

(3)Respondent is an innocent purchaser without notice, so far as it relates to any raise in his taxes over and above the amount as assessed by the viewers and engineer in Drainage District No. 4 and confirmed by the county court by its approval and confirmation of the final report, and any attempted raise of said amount of taxes assessed against his land and confirmed as aforesaid, is void. Meir v. Blume, 80 Mo. 179; Plow Co. v. Sullivan, 158 Mo. 440; Drey v. Doyles, 99 Mo. 459.

GRAVES, J.—This case reaches us through a certification from the Springfield Court of Appeals, the grounds for such certification being that the record involves constitutional questions as well as a construction of revenue statutes. It is sufficient to say that constitutional questions were duly lodged in the answer. Judge STURGIS for the Springfield Court of Appeals thus states the case:

"This is a suit for delinquent drainage ditch taxes assessed against land owned by defendant. The suit is brought in the name of the State at the relation of the Collector of the Revenue of Dunklin County, Missouri, for the use and benefit of Drainage District Number Four of that county. The record discloses that such drainage district is one formed under the supervision of the county court as provided by article 4, chapter 122, Revised Statutes 1899, which as amended in 1905, is now article 4, chapter 41 (Secs. 5578-5635), Revised Statutes 1909. The controversy is as to the amount of special taxes properly assessed against this land, the defendant conceding and offering to pay $59, while plaintiff demands $115.56. The amount defendant concedes and is offering to pay is the original (annual) assessment made or confirmed by the county court under section 8288, Revised Statutes 1899 (sec. 5588, R. S. 1909), and apportioned into installments under section 8300, Revised Statutes 1899 (Sec. 5601, R. S. 1909). It appears that the county court some five or six years after the drainage district was formed and the confirmation of the original assessments made by the viewers and en-

gineers appointed for that purpose undertook, by its order of April 29, 1912, to 'rearrange' and increase the amounts of the annual installments yet to fall due for the years 1912 to 1924 inclusive. The occasion for making this order, as we gather from the record, is that because of some error the county court issued and sold bonds to the amount of nearly $56,000, but levied assessments against the lands within the district for an amount of only about $36,000. The increased assessments are to cover this deficiency of some $20,000, and provide a fund, otherwise insufficient to pay the bonds at maturity. It is agreed that if the county court has power and authority to make this order of April 29, 1912, increasing the annual assessments, then the amount demanded is due; otherwise, only the amount tendered is due. The defendant contends that the county court exhausted its power to make assessments in its order confirming the report of the viewers and engineers in connection with the formation of the district and could not at a later date make another order increasing the amounts then assessed.

"The defendant's answer contains these allegations: 'And defendant further answering says that plaintiff is attempting to collect from him a second assessment which was made without notice to defendant, and defendant says that the county court of Dunklin County had no authority to make such second assessment, as was done in this instance, inasmuch as such second assessment was made without any notice and made after the completion of the work to be done in said drainage district and was made without due process of law, and it constituted the taking of private property for public use without compensation in violation of the Federal and State Constitution, to-wit: Section 1 of the Fourteenth Amendment of the Constitution of the United States, and section 30 of article 2 of the Constitution of Missouri. Wherefore, defendant says that said second assessment or arrangement wherein his taxes were increased from $59 to $115.56, is null and

void, and of no effect and he asks judgment cancelling said order of the said county court for the reason that the same is null and void and without authority and in violation of both the Federal and State Constitution and that plaintiff may be compelled to accept the said sum of $59, the original amount due under the original assessment made by the viewers and engineer in said drainage district and confirmed by the final order of the county court in approving the final report of the said viewers and engineer in said drainage district.' In this connection the record shows that no notice was given to the landowners as to the action of the county court in making this order of April 29, 1912, increasing the assessments. The plaintiff's contention is that the landowners were already in court for this purpose because of receiving notice of the original proceedings.''

Such other matters as may be material can be noted in the course of the opinion. The foregoing outlines the case.

I. The question involved is single and plain. Whether easy of solution remains to be seen. The validity of the order of the county court of Dunklin County of date April 29, 1912, is the turning point in the case.

**Assessments Less Than Benefits.** The surrounding facts are: The county court in fact approved of an amount of benefits as against the land involved herein, which, exclusive of interest, is more than sufficient to pay all previous amounts, and all assessments to be made under this order of April 29, 1912. However, at the time of the organization of the district, and whilst approving the report of the viewers, and approving the assessments of benefits aforesaid against the land in question, the county court approved and provided for annual assessments, which was discovered would not meet the bond issue which the court had directed to be issued. This bond issue was for $55,977.77. They were sold for $56,077.77, and that sum placed to the credit of the district. When the work had been done it was found that there was a surplus of

$8,000 and this was used in the discharge of the obliga-
tions and accrued interest. Although the court direct-
ed the issuance of bonds in the sum of over $55,000, as
stated supra, it only approved and directed assessments
against benefits in something over 36,000, leaving a dif-
ference between the bond issue and the provision for its
payment of more than $19,000.

This difference was reduced, by the application of
the surplus aforesaid, to a little over $15,000. In 1912
when the discrepancy between the bonded debt and this
approved assessment was discovered, the order of April
29, 1912, for an increased assessment for the remaining
years, was made at the instance of the bond-holders.
Under the original assessment the amount due from
respondents' land for 1912, was $59, but under the order
of April 29th, supra, it was $115.56. The difference
was the real amount in dispute, defendant having ten-
dered the former sum, and kept his tender good by de-
posit.

Defendant was not the owner of the land in ques-
tion at the organization of the district, but bought it
afterward, and prior to the order of April 29th, supra.
It is admitted that no notice was given to landowners
prior to making this order of April 29th, but that the
previous owner of the land involved was properly in
court at the organization of the district, is not ques-
tioned. The trial court held that the defendant was
not liable for more than the $59, and that the order of
April 29th, supra, was invalid. This view is reached
from several angles, and these we take in order.

II. It is first contended that after the county court
had made its original assessment against the lands of
the district its power in the premises was fully exhaust-
ed, and no further exercise of the power to levy assess-
ments could be valid. This on the theory that under
the county court act there was no specific
**Power to Make Additional Assessments.** grant of power to make a second or addi-
tional assessment, even though the benefits
found are in excess of the assessment

made. Just how the discrepancy between the au-
thorized bond issue and the first assessment of
taxes made, occurred, does not clearly appear from the
record. It does appear, however, that the reported bene-
fits were some thousands more than the bond issue,
and the directed assessments of taxes some $19,000 less
than the bond issue. If the county court exhausted its
power, when it made the first assessment of taxes
against the lands of this district, then we have an end
to this controversy.

In 1913, the Legislature (Laws 1913, pp. 271 and
281) made specific provisions for additional levies of
assessments, and from this it is argued that we have a
legislative construction to the effect that no such power
previously existed. If this contention be true it is at
best only persuasive, rather than binding authority. We
must go to the previous law, and from its context de-
termine the powers of the county court. This drainage
district was organized under article 4, chapter 122, Re-
vised Statutes 1899, as amended by the Act of 1905. We
will have to go to the said Act of 1905 for most of the
law of this case, as it was in full effect at the organiza-
tion of the district. This act repealed many sections of
article 4, chapter 122, Revised Statutes 1899, and en-
acted new sections in lieu thereof. These new sections
are the applicable law, and if they, when considered
with the old sections, furnish no basis for a subsequent
assessment of the lands in the district, defendant is
right in his contention. That there is no express au-
thority for such action is clear, and the real question is
to determine whether or not the then law precludes a
clear inference of such a power.

By section 8284 (Laws 1905, p. 182) it is provided
that after the county court has determined that the im-
provement should be made, it then shall appoint an en-
gineer and three viewers. These viewers are given
specific duties to perform. Among other things to be
done by this board, this section says:

"They shall also make and return a schedule of all lots and lands and of public and corporate roads or railroads that will be benefited, damaged or condemned by or for the improvement, and the damage or benefit to each tract of forty acres or less, and *make separate estimates of the cost of location and construction, and apportion the same to each tract in proportion to the benefits* or damages that may result to each."

In the same act, section 8286 reads:

"The viewers shall have the power to condemn the right of way for the ditch or other improvement; and when damages are allowed persons, their benefits, if benefited, shall be taken into consideration, and their assessments for benefits shall be reduced by the amount of their damages; and if not benefited they shall be allowed and paid compensation for their damages."

At first blush one might be impressed with the view that assessments for benefits should be the same as the taxes levied by the county court, but we are inclined to the idea that this section has reference solely to condemnation of lands and the adjustment of damages therefor. This, because of other sections which follow, as well as those which precede it. Thus in section 8284, these viewers are required to apportion the cost of location and construction in proportion to the benefits found, but not necessarily up to the benefits found. In other words, they might find that a certain tract would be benefited $800, but further find that its due proportion of the cost of location and construction would be only $400.

Section 8287 of said act provides that upon the incoming of the report of the viewers, which report must give the part of the cost actually apportioned against each tract of land, the court shall set the same down for hearing and give notice of such hearing.

In the instant case twenty-year bonds were to be issued, and the apportioned cost of construction would cover a period of twenty years. This cost to the land involved here was an annual payment of $59 for the

twenty years, which was raised by the subsequent order to more than $115 per year.

Now it must be noted that the landowner's, under the statute, supra, were entitled to a hearing upon the amount of benefits assessed against their lands, as well as the amount of the proportionate cost of construction to be charged against that land. The law provides for but one time for such a hearing, and that is prior to the approval by the county court of the viewers' report. Passing now from a consideration of said section 8287, we come in order to 8288 (Laws 1905, p. 184) which reads:

"The court shall first determine whether the required notice has been given. If it finds that due notice has not been given, it shall continue the hearing to a day to be fixed by the court, and cause the notice to be given as provided in section 8287; and when the court finds that due notice has been given, *it shall examine the report of the engineer and viewers, and if it appears to the court that the estimates of the cost of location and construction and of damages and benefits to each tract are correct, and that the apportionment of the cost of location and construction, is, in proportion to the benefits and damages to each tract, in all things fair and just,* it shall approve and confirm the same; if, however, the county court shall find that the apportionments reported by the engineer and viewers are unfair or unjust, and, as made, ought not to be confirmed, it may, by an order of record, amend the report upon the evidence so as to make the apportionments fair and just in proportion to the benefits or damages; if the county court shall find that the location or specification of the ditch or other improvement should be changed it may by an order of record change such location and dimensions, provided that, before the county court shall change the location reported by the viewers, the parties interested shall convey or cause to be conveyed to the drainage district, a right of way for the ditch or other

improvement upon the route selected by the county court."

The italics here, as elsewhere in the quotation of these statutes, are ours.

This section again emphasizes the fact that the apportionment of the cost of construction to the several tracts of land is one primarily for the viewers, but thereafter to be confirmed by the court, or modified and then confirmed by the court. Following the same thought, i. e., that the apportionment of the cost of construction, as made by the viewers, is a matter for court determination when the report is up for consideration, after notice given, we find this language used in section 8292 (Laws 1905, p. 185):

"Any person whose lands are affected by the proposed improvements may, on or before the day set for the hearing by the court, *file exceptions to the apportionments made by,* and to the action of, the viewers upon any claim for compensation or damages. The county court may hear testimony and examine witnesses upon all questions made by such exceptions, and for that purpose may compel the attendance of persons as witnesses and the production of other evidence, and its decision upon each of the exceptions shall be entered of record."

Note the language. The landowner must file exceptions to the apportionments made. These exceptions must be tried out by the court, and if the report of the viewers is sustained, it is a final judgment as to the landowner, unless he appeals therefrom and reverses the action of the county court. The question then arises, if it is afterward found that by this final judgment the amount is too small, is it not still a finality so far as the landowner is concerned? We think so. Both parties have had their day in court. Judgment has been rendered, and there is no provision in the law for a re-assessment of these costs of construction. By the Act of 1913, the Legislature recognized that further authority was necessary for a re-assessment, and amended

the law, but that act cannot be made retroactive, and applied to this case.

. The Act of 1905 contemplated but one action by the county court. It, of course, contemplated that the charges against all the tracts in the district would pay off the bonds issued, but it further contemplated that all this would be done at the hearing provided for by the law, and not by future orders of the court. It contemplated that the final judgment approving the report would have the apportionments against the lands equal to the cost of construction, but from this it does not follow that after a different final judgment is entered, power is left in the court to correct it four or five years later. Absent a · statute authorizing later action by the court (and there is none) this action of the county court was *coram non judice,* and void. Whether equity might reach the case, we do not consider in this, a law case. It may be that the Act of 1913 was the outgrowth of this case, but from any angle it is unavailing here. All through the Act of 1905 runs the idea that the viewers must first act as to the assessment of the costs of construction as against each tract of land. [Vide Sec. 8298, Laws 1905, p. 187.]

The payment of the bonds issued is limited to the proceeds of these assessments of cost of construction. If they pay the bonds, well and good, but if they do not, there is no further recourse under this Act of 1905, under which this district was organized. Of this Act of 1905, sections 8301 and 8301a read:

"Sec. 8301. The said assessments, after the confirmation by the county court as herein provided, together with the interest thereon, as so fixed by the court, shall be entered by the county clerk, in a special book, to be known as the ditch assessment book, which shall be provided by him at the expense of the county, and annually thereafter, until such assessment and the interest thereon shall be fully paid, the county clerk shall enter, opposite each tract of land, upon a ditch tax book in columns to be provided for that purpose, the amount

of the installment of such assessments for such year, and the interest for such year on all unpaid installments not past due, as fixed by the county court as herein provided; the said installments of said assessments and the interest thereon shall be applied to the payment of the bonds, principal and interest, issued pursuant to this article, and, except as herein provided, to no other purpose, *and the payment of such bonds shall be thus secured.*

"Section 8301a. The county court may, if prayed for in the petition, issue bonds in denominations of not less than one hundred dollars, and sell the same to meet the expenses of locating and constructing any ditch or improvement under the provisions of this article, which bonds shall mature, at annual intervals, commencing after a period of two years, for not exceeding twenty years, bear interest at not to exceed six per cent per annum and be payable semi-annually at the office of the county treasurer. Such bonds shall be sold by the county treasurer, without expense to the county, to the highest and best bidder, after the county court shall have fixed the time and place of such sale, and given notice thereof, by publication, in some weekly newspaper published in the county, but in no case shall any such bond be sold for less than par: *Provided,* such bonds shall show upon their face the purpose for which they are issued *and shall be payable out of moneys derived from such assessments and none other."* Again the italics are ours.

But reverting to section 8301, for another thought, it clearly appears therefrom that the lawmaker only contemplated the one action by the county court. This section only leaves (after the confirmation judgment of the county court has been entered) simple ministerial duties for the county clerk. It contemplates no further action by the court, nor do we find in the statutes governing drainage districts organized by the county court, under this article 4 of chapter 122, Revised Statutes 1899, and the Act of 1905, any power or

right to reassess the lands with the costs of improve-ments, until the Act of 1913. County courts are of limited jurisdiction, and their powers must be gathered from the law. We find no law for the action of the county court in 1912, and it must fall.

III. We are cited to State ex rel. v. Wilson, 216 Mo. l. c. 282, as authority for the action of the county court in this case. The ruling there is Other not applicable here. We were then discuss-Statutes Distinguished. ing a township drainage district, organ-ized under article 5 of chapter 122, Re-vised Statutes 1899. The district in question here was organized under article 4, chapter 122, Revised Stat-utes 1899, as amended by Acts of 1905. In article 5, chapter 122, Revised Statutes 1899, we had section 8337 which gave the county court express authority for supplemental assessments and it was upon this express statute, that we sustained the supplemental assessment without notice, because the statute so read.

We are also cited to the case of State ex rel. v. Bates et al., 235 Mo. 262. That case does not discuss the statutes we have here under consideration. That drainage district was organized under article 7 of chapter 122, Revised Statutes 1899. That article also had section 8369, which provided for an additional as-sessment. State ex rel. v. Young, 255 Mo. l. c. 635, is also cited. The drainage district there involved was one organized under article 5, chapter 122, Revised Statutes 1899, and what we have said of State ex rel. v. Wilson, supra, applies to this case. It is not in point as subsequent assessments are specifically provided for in said article. Under that law the jurisdiction of the county court was expressly given. Not so in the case at bar. Barnes v. Construction Co., 257 Mo. l. c. 195, is cited, but it does not reach the question here.

We have been cited to no case in Missouri holding that under article 4 of chapter 122, Revised Statutes 1899, as amended by Acts of 1905, the county court has

any power to take any step towards a second assessment. The Legislature so recognized this absence of power by granting the same by the Act of 1913. Because other articles contained express power to the county court to make such subsequent assessments, does not help the plaintiff in this case. The right to make this subsequent assessment must be sought from the express provisions of the law under which the drainage district was organized. That law conferred no such power upon the county court, and its order of April 29, 1912, was void.

The judgment *nisi* was correct and is affirmed. All concur.