THE STATE OF MISSOURI, at the Relation and to the Use of HENRY E. BROUGHTON, Collector of the Revenue in and for the County of New Madrid, in the State of Missouri, Respondent, v. ROBERT BURETT OLIVER, Appellant.

Springfield Court of Appeals, January 18, 1919.

1. DRAINS: Reassessment: Power of Court. Revised Statutes 1909, section 5599, providing for confirmation of drainage ditch taxes by county court, and making same a lien on the land, and section 5602, providing for entry of confirmed ditch assessment upon the books by the county clerk, do not authorize subsequent re-assessments of the annual rate by the court court.

2. ————: Fixing Annual Assessments: Modification. Where a county court modified and confirmed the final report of the viewers and engineers of a drainage district, and fixed the annual rate per centum assessment thereon, it became a final judgment, and when the court adjourned for that term it no longer had authority to modify such judgment.

3. COURTS: County Courts: Missouri: Jurisdiction: Statute. A county court possesses no powers, except those conferred by statute.

Appeal from New Madrid County Circuit Court.—*Hon. Frank Kelly*, Judge.

REVERSED AND REMANDED (*with directions.*)

527

*Oliver & Oliver* for appellant.

*James R. Brewer* and *Henry C. Riley* for respondent.

BRADLEY, J.—Action by the collector of new Madrid county to recover delinquent drainage ditch taxes for the years 1907, 1908, 1909, and 1910 assessed against lands owned by defendant. The petition sets out the various steps in the formation of the district, and charges that the taxes sued for are proper assessments against defendant's lands in the district, and are delinquent, etc. The answer is a general denial, except as to the ownership of the lands described in the petition, and pleads tender of an amount less than claimed. A jury was waived and on trial before the court at the September term, 1913, plaintiff recovered for the amount sued for, after unsuccessful motions for new trial and in arrest, defendant appealed, and appeal was granted to this court. This court certified the cause to the Supreme Court on the ground that the construction of a revenue law was involved. [State ex rel. v. Oliver, 186 Mo. App. 272, 172 S. W. 75.] The Supreme Court retransferred the cause to this court. [State ex rel. v. Oliver, 273 Mo. 537, 201 S. W. 868.]

The proposition for solution here is the validity of orders at subsequent terms made without notice or hearing raising or changing the rate of interest on the assessments as fixed by the county court at the time of the confirmation of the final report of the viewers and engineer. To get up to this proposition, we state briefly the history of the formation of the district. Drainage District No. 18 of New Madrid county for whose use this suit is prosecuted was organized under the provisions of article 4 of chapter 122, Revised Statutes 1899, as amended by the Laws of 1905, p. 180 et seq. In due time after the filing of the petition on June 27, 1905, three qualified viewers and a competent engineer were appointed to make the preliminary re-

port upon the proposed improvement. This report was thereafter returned and filed, and on hearing the county court found in favor of making the proposed improvement. The viewers and engineer were reappointed, qualified and proceeded thereafter to the necessary duties for the final report as provided in Laws 1905, sections 8284, et seq., pp. 182, 183. The final report of the viewers was returned and filed, and on July 10, 1906, at the July term of the county court said final report after due notice thereof was modified and confirmed. [Laws 1905, sec. 8288, p. 184.] On that date, to-wit, July 10, 1906, the county court made this order of record: "Now again this cause coming on to be heard and the work of constructing the improvements having been let as required by law and the cost of location and construction and all compensation and damages having been ascertained by the court to be forty-five thousand, one hundred and fifteen dollars and fourteen cents, and the court being fully advised in the premises does now determine and order that each and every tract of land affected by the construction of said work as shown by the report of the viewers, be, and the same is hereby assessed with a fund shown by said report as modified and confirmed by the court, to pay for the construction of said work and all expenses incidental thereto, including the compensation of county officials. It is further ordered that said assessments herein made and confirmed by the court be placed on the ditch tax books for said Drainage District No. 18, against the lands assessed, and all these findings and orders be entered on the record, and that said principal sum shall be paid in eighteen annual installments at the same time in each year that the ordinary state and county taxes are due and payable, and that the rate per centum per annum of the assessment to raise the fund to pay the principal and interest thereon of the said debt and the bonds hereinafter mentioned as they shall mature shall be as follows: For construction and incidental expenses assessed against each lot or tract of

202 M. A.—34

land, also against each public road and railroad embraced in said proposed drainage district, as the law provides, to-wit:

3 per cent of the estimated cost in the year 1907.
3 per cent of the estimated cost in the year 1908.
4 per cent of the estimated cost in the year 1909.
4 per cent of the estimated cost in the year 1910.
4 per cent of the estimated cost in the year 1911.
4 per cent of the estimated cost in the year 1912.
6 per cent of the estimated cost in the year 1913.
6 per cent of the estimated cost in the year 1914.
6 per cent of the estimated cost in the year 1915.
6 per cent of the estimated cost in the year 1916.
6 per cent of the estimated cost in the year 1917.
6 per cent of the estimated cost in the year 1918.
6 per cent of the estimated cost in the year 1919.
6 per cent of the estimated cost in the year 1920.
6 per cent of the estimated cost in the year 1921.
8 per cent of the estimated cost in the year 1922.
8 per cent of the estimated cost in the year 1923.
8 per cent of the estimated cost in the year 1924.

And in accordance with the prayer of the petition, the court finds that in order to meet the expenses of constructing the ditches and improvements herein it is necessary to issue bonds of the county in that behalf, in the sum of forty-five thousand, one hundred and fifteen dollars and fourteen cents. Wherefore it is ordered and adjudged by the court for the purpose of raising money to pay the costs and expenses for the constructing of said work, the bonds to be issued to the amount of forty-five thousand, one hundred and fifteen dollars and fourteen cents, in denominations of one thousand dollars each, with the exception of the first one to mature which shall be in the denomination of one thousand, one hundred and fifteen dollars and fourteen cents; said bonds are hereinafter particularly set out to be dated September 1, 1906, and to draw interest from that date, and that the rate of interest on said bonds shall be six per cent per annum, to be paid an-

nually on the first day of March after the date of their issue; said bonds shall be numbered from one to forty-five inclusive, and the principal of said bonds mature and become due as follows: (Here follows the amount and maturity dates of the bonds, the form thereof, etc.)

"It is further ordered by the court that the assessment against each and every piece, parcel and tract of land as shown by the report of viewers herein as amended and confirmed by the court, which orders are hereinafter entered in this cause shall bear interest at the rate of six per cent per annum for the purpose of creating a fund to pay the interest on said bonds and the expenses of collecting and dispersing said funds. It is also ordered that the clerk of this court prepare a ditch tax book for said Drainage District No. 18, in which he shall extend the total amounts of interest which shall be due for each and every year until all the assessments are made." The contract for the construction of the ditch was let and bonds were issued and sold on the basis of the above order in the sum of $45115.14.

Subsequent and without any notice to the landowners in the district the county court made separate orders for the years 1907, 1908, 1909, and 1910, changing the rate per centum on the estimated cost of construction and incidental expenses as shown by the final report of the viewers and engineer as modified and confirmed on July 10, 1906, as follows: May 8, 1907: "Now it is ordered by the court that the sum of eight per cent of the total estimated cost of construction and incidental expenses as shown by the report of viewers, and as amended by order of this court, be and is hereby levied against each and every tract of land, road and railroad in and assessed for the construction of the improvements of Drainage District No. 18 in New Madrid county, Missouri, to raise the sum of money required to pay all interest on bonds, all maturing bonds, and also incidental expenses of said district

for the year 1907; and it is further ordered that the county clerk in and for the county of New Madrid make a tax book for the collector's use for said district for the year 1907, and that he extend said 8 per cent against all the property assessed therefor.''

For 1908, 1909, and 1910 the same order in form as last set out, supra, was made except the rates levied were 9, 10, and 10 per cent. respectively.

Section 8298, Laws 1905, p. 187, now section 5599, Revised Statutes 1909, among other things provides that ''the assessment as made by the viewers and confirmed by the court, against all lots and parcels of land, and all public or corporate roads and railroads benefited by the ditch or other improvement, and interest on the amount of all such assessments, at a rate, not exceeding six per cent per annum, to be fixed by the county court at the time of its confirmation of the report of the engineer and viewers, or within three months, thereafter, together with all costs of collecting delinquent assessments or any installments thereof, including a reasonable attorney's fee, to be fixed by the court and taxed as costs in the action brought to enforce a delinquent assessment or installment thereof, shall from the date of such confirmation of the report of the engineer and viewers, until paid, constitute a lien, to which only the lien of the State for State, county, school and road taxes shall be paramount, upon all of the lands assessed, and shall be collected, in the same manner as State, county and school taxes upon real estate are collected, and when collected the said tax shall be by the collector paid over to the county treasurer monthly.''

Section 8301, Laws 1905, p. 188, now section 5602, Revised Statutes 1909, we think, limits the county court as to the assessment and interest thereon to the assessment and interest as fixed by the final report of the viewers as confirmed. Section 8301 is as follows: ''The said assessments, after the confirmation by the county court as herein provided, together with the interest thereon, as so fixed by the court, shall be entered by

the county clerk in a special book to be known as the ditch assessment book, which shall be provided by him at the expense of the county, and annually thereafter, until such assessment and the interest thereon shall be fully paid, the county clerk shall enter, opposite each tract of land, upon a ditch tax book, in columns to be provided for that purpose, the amount of the installment of such assessments for such year, and the interest for such year on all unpaid installments not past due, as fixed by the county court as herein provided; the said installments of said assessments and the interest thereon shall be applied to the payment of the bonds, principal and interest, issued pursuant to this article, and, except as herein provided, to no other purpose, and the payment of such bonds shall be thus secured."

Section 898, supra, provides that the assessment as made by the viewers and confirmed by the court against the lands in the district, and the interest on the amount of all such assessments at a rate not exceeding six per cent per annum, etc., shall *from the date of such confirmation of* the report of the engineer and viewers until paid constitute a lien, etc., not some other assessment and some other rate fixed at some subsequent term. Section 8301, supra, provides that the *said* assessments after confirmation together with the interest thereon as *so* fixed by the court shall be entered by the clerk in the ditch assessment book; not some other assessment with the interest thereon made at some subsequent term of the court. We do not think there is any foundation in these sections (8298 and 8301, supra) or in any other statute in force at the time of the organization of the drainage district here under consideration that will support the orders of the county court of November 20, 1906, and subsequent affecting the annual rate per centum on the assessments returned by the viewers and engineer and confirmed by the county court on July 10, 1906.

State ex rel. v. Redman, 270 Mo. 465, 194 S. W. 260, is, we think, in point. In the Redman case the

county court at a subsequent term after having modified and confirmed the final report of the viewers and engineer of a drainage district organized under the same law as the district here under consideration (article 4 of chapter 122, Revised Statutes 1899, as amended by Laws 1905, p. 180) without notice to the landowners affected, made an order increasing the assessment on each tract of land affected in order to take care of a bond issue about $20,000 in excess of the total assessment for benefits previously confirmed and entered of record. The Supreme Court in discussing the assessment made long after the confirmation of the final report of the viewers and engineer said: "But reverting to section 8301, for another thought, it clearly appears therefrom that the lawmaker only contemplated the one action by the county court. This section only leaves (after the confirmation judgment of the county court has been entered) simple ministerial duties for the county clerk. It contemplates no further action by the court, nor do we find in the statutes governing drainage districts organized by the county court, under this article 4 of chapter 122, Revised Statutes 1899, and the Act of 1905, any power or right to reassess the lands with the costs of improvements, until the Act of 1913. County courts are of limited jurisdiction, and their powers must be gathered from the law. We find no law for the action of the county court in 1912, and it must fall. . . . We have been cited to no case in Missouri holding that under article 4 of chapter 122, Revised Statutes 1899, as amended byActs of 1905, the county court has any power to take any step towards a second assessment. The Legislature so recognized this absence of power by granting the same by the Act of 1913. Because other articles contained express power to the county court to make such subsequent assessments, does not help the plaintiff in this case. The right to make this subsequent assessment must be sought from the express provisions of the law under which the drainage district was organized. That law conferred no such

power upon the county court, and its order of April 29, 1912, was void."

When on July 10, 1906, the county court of New Madrid county modified and confirmed the final report of the viewers and engineer, and fixed the annual rate per centum thereon it became a final judgment, and when the court adjourned for that term it no longer had authority to modify its previous judgment. It is said in the Redman case, supra, l. c. 476: "The Act of 1905 contemplated but one action by the county court. It, of course, contemplated that the charges against all the tracts in the district would pay off the bonds issued, but it further contemplated that all this would be done at the hearing provided for by the law, and not by future orders of the court. It contemplated that the final judgment approving the report would have the apportionments against the lands equal to the cost of construction, but from this it does not follow that after a different final judgment is entered, power is left in the court to correct it four or five years later. Absent a statute authorizing later action by the court (and there is none) this action of the county court was *coram non judice*, and void. Whether equity might reach the case, we do not consider in this, a law case. It may be that the Act of 1913 was the outgrowth of this case, but from any angle it is unavailing here. All through the Act of 1905 runs the idea that the viewers must first act as to the assessment of the costs of construction as against each tract of land. [*Vide*, sec. 8298, Laws 1905, p. 187.]"

It appears in the case at bar that the increase in the rate per centum on the annual assessment above that made when the final report of the viewers and engineer was confirmed on July 10, 1906, was made to meet the expense of constructing two lateral ditches not originally contemplated, and to pay the county officers their fees. However laudable the action of the county court may be in undertaking to compel the landowners of the district to pay fees of the county officers justly earned, and to pay for improvements

actually received, it must be remembered that a county court possesses no powers except those conferred by statute, and no statute having conferred the power it undertook to asume in the instant case its action therein as in the Redman case is void.

It is conceded that defendant tendered each year the amount due based on the final report of the viewers and engineer as confirmed by the county court on July 10, 1906; but the exact amount tendered is not shown here. The cause is, therefore, reversed and remanded with directions to enter judgment against defendant for the amount due as determined by the final report of the viewers and engineer as modified and confirmed by the county court on July 10, 1906. *Sturgis, P. J.,* and *Farrington, J.,* concur.