DRAINAGE DIST. NO. 4 OF DUNKLIN COUNTY, MO., et al. v. MURPHY.

No. 11736.

Circuit Court of Appeals, Eighth Circuit.

April 15, 1941.

Langdon R. Jones and John T. McKay, both of Kennett, Mo. (Elbert L. Ford, of Kennett, Mo., on the brief), for appellants.

R. B. Oliver, Jr., of Cape Girardeau, Mo., and Seward McKittrick, of St. Louis, Mo. (Carl Trauernicht, of St. Louis, Mo., Oliver & Oliver, of Cape Girardeau, Mo., and Charles & Trauernicht, of St. Louis, Mo., on the brief), for appellee.

Before STONE and GARDNER, Circuit Judges, and OTIS, District Judge.

STONE, Circuit Judge.

Appellee is holder of bonds issued by the Drainage District. Appellants are the District, the County of Dunklin (Missouri), and the Judges of the County Court—the Judges of the County Court being the governing body of the District under State statutes. In November, 1936, appellee secured a judgment, in the United States District Court for the Eastern District of Missouri, against appellants for the amounts due on the bonds—such payment to be from "funds raised or to be raised by benefit assessments upon and against the land" in the District. Being unsuccessful in securing any action by appellants toward levy and collection of such benefit assessments to pay the judgment, appellee brought a mandamus proceeding in the above Court to compel such levy and collection. From the grant of a peremptory writ requiring such levy and collection of benefit assessments, defendants bring this appeal.

Before considering the issues presented here, it is necessary to state certain limitations upon the remedy of mandamus which are urged by appellants as applicable. These are that mandamus is a discretionary writ; that it will not be used to promote a wrong; and that it will not be used to require action by one who has no power to take such action. The remedy is discretionary. Ex parte Skinner & Eddy Corp., 265 U.S. 86, 95, 96, 44 S.Ct. 446, 68

L.Ed. 912. In the exercise of that discretion, it will not issue to promote a wrong. Duncan Townsite Co. v. Lane, 245 U.S. 308, 311, 38 S.Ct. 99, 62 L.Ed. 309. It will not issue to require an act by one who has no power so to act. Ex parte National Park Bank, 256 U.S. 131, 133, 41 S.Ct. 403, 65 L.Ed. 863.

The issues presented here are (1) res judicata, (2) laches, and limitations.

### (1) Res judicata.

Statement of certain facts are necessary to understand the application of the issues of res judicata here. This District was organized in 1905 in accordance with existing statutory requirements. Those statutes provided that the County Court be the governing body of the District; that engineers make a survey and examination resulting in a report to the court wherein would be set out the location, character and cost of contemplated improvement, the benefits or damages to severally owned tracts of land, and an apportionment of the estimated cost against the individually benefited tracts; that, after opportunity for hearing the landowners affected, the court should determine the assessment for taxation against the individually benefited tracts for the purpose of paying for the improvements; that such assessment should be a lien upon such tracts; and that the sole security for any bonds issued by the District to raise money for the improvements should be such assessments and liens.

Following the above statutory procedure, the engineers report estimated construction cost at around $36,000; benefits in excess of $55,000; and apportioned this cost against the severally benefited tracts of land. Proper notice was given affected landowners and, after hearing, the County Court assessed as taxes the above cost against the several tracts.

Through some mistake (not explained in this record), the County Court issued around $55,000 of coupon bonds instead of about $36,000 (the estimated cost of construction), all of which were sold. All of the above assessed taxes have been collected and paid upon the bonds leaving about $15,000 of bonds unpaid with the above assessments exhausted. The bonds held by appellee are such unpaid bonds.

When this situation was brought to the attention of the County Court, in 1912, it made an order then for an additional cr

increased tax assessment (but within the benefits) upon the benefited tracts sufficient to pay the outstanding bonds. A challenge of this assessment by a landowner, resulted in a decision (State ex rel. Douglas v. Redman, 270 Mo. 465, 194 S.W. 260) which determined the power of the County Court to make this second assessment. That decision determined two issues: such power of the court under statutes existing when the second assessment was made and the effect, upon this order, of an amending statute of 1913 which expressly authorized such additional assessments. This decision held lack of such power under such existing statutes and no retroactive effect of the 1913 amendment to the order of 1912.

In 1932, appellee brought the action on these bonds resulting in the above judgment (November, 1936) against appellants for the amounts due to be paid out of assessments. Murphy v. Dunklin County et al., D. C., 17 F.Supp. 128. Failure of the County Court to make such assessments resulted in this mandamus proceeding. In this 1932 suit, the Court considered the Redman case and the effect of the 1913 amendment, as well as a similar amendment of 1919. It held the Redman case not applicable to an assessment made after the 1913 amendment and the 1919 amendment applicable to such assessment.

In the above situation, we have two opposed contentions of res judicata. Appellants urge the Redman case as having adjudicated that the power of the County Court to levy tax assessments *finally* ended when it made the original assessment in 1905 and that such determination is res judicata as to any power to levy the assessment sought in this mandamus proceeding. Appellee urges that the same contention was made in the Murphy case, determined against appellants and no appeal therefrom taken, hence, that the Murphy case is res judicata as to the existence of power in the County Court to make the assessment sought in the mandamus. To this contention of appellee, appellants answer that in this mandamus proceeding the issues in the Murphy case may be reopened —for purposes of the mandamus—since when "a party returns to a court of chancery to obtain its aid in executing a former decree it is at the risk of opening up such decree as respects the relief to be granted on the new bill" (brief of appellants).

The crux of appellants' contention is that the Redman case determined not only that the amending Act of 1913 was not retroactive to the order of the County Court made in 1912, but also that such Act could not empower the Court to order additional assessments after the Act became effective. Unless that position can be maintained, appellants' contention of res judicata falls. The only purpose or effect of appellee's contention, that the Murphy case is res judicata of the scope of the Redman decision, is to foreclose our present examination of the scope of the Redman case. Also, the only purpose or effect of appellants' contention, that the Murphy case be reopened, is to avoid such foreclosure.

■ Since we are convinced that the Redman case does not have the scope urged by appellants, we see no purpose in discussing whether the Murphy case is res judicata or whether the Murphy case is reopened by this mandamus proceeding. A careful study of the Redman case opinion convinces us that the Court determined nothing more than that the County Court had no power to make an order, in 1912, for an additional assessment. Concerning the effect of the 1913 amendment, upon the 1912 order of the County Court, the Court said: "We must go to the 'previous law, and from its context determine the powers of the county court" (194 S.W. at page 262) and "By the act of 1913, the Legislature recognized that further authority was necessary for a reassessment, and amended the law; but that act cannot be made retroactive, and applied to this case" (194 S.W. page 263). We find no language in the opinion to justify us in believing that the Court held more than "We find no law for the action of the county court in 1912, and it must fall" (194 S.W. page 263). This Court has heretofore declared the scope of the Redman case to be as we have determined above. Bates County v. Wills, 8 Cir., 269 F. 734, 739, cer. den. 255 U.S. 571, 41 S.Ct. 375, 65 L.Ed. 791. This contention is ruled against appellants.

(2)  Laches and Limitations.

The contentions of appellants that mandamus should not issue because not begun within applicable statutory limitations; and because of laches arising from delay and changes in land ownership are countered by the contention of appellee that those two

issues are res judicata by the unappealed Murphy decision, 17 F.Supp. 128. As to this res judicata contention, the position of appellants is stated, in their brief, as follows:[1] "Appellants do not dispute the general rule of res judicata as contended for by relator, but appellants insist that this case falls within the exception; relator is now asking this court by way of mandamus to aid him in executing a former decree of the District Court. The courts are uniform in holding that mandamus is governed by equitable principles. In that situation, appellants respectfully state that by asking this court to aid him in executing the former decree, relator has run the risk of opening up the judgment in Murphy v. Dunklin County, Supra, and that this court has a right to determine whether or not relator was entitled to such judgment."

Since appellants concede that their contentions as to laches and as to limitations are subject to the application of res judicata by the Murphy case unless, in this mandamus proceeding, the Murphy case can be opened up "to determine whether or not relator was entitled to such judgment" (in the Murphy case), the issue to be first determined is whether the Murphy case should be so "opened up".

The argument by appellants in support of their contention that the Murphy case should be so "opened up" is as follows: that while mandamus is a legal remedy, the issuance of the writ is governed by "equitable principles"; that it is an equitable principle that, where a party turns to a chancery court to aid in executing a former decree, it is at the risk of opening up such decree as respects the relief to be granted under the new bill; that, therefore, the matters resolved in the Murphy case may now be examined to determine whether mandamus should issue.

■ Although "mandamus is at law, its allowance is controlled by equitable principles" United States v. Dern, 289 U. S. 352, 359, 53 S.Ct. 614, 617, 77 L.Ed. 1250. Also, it is clear that "where a party returns to a court of chancery to obtain its aid in executing a former decree, it is at the risk of opening up such decree

as respects the relief to be granted on the new bill" O'Brien v. Wheelock, 184 U.S. 450, 483, 22 S.Ct. 354, 367, 46 L.Ed. 636.

■ It may be—though we do not examine nor determine it here—that res judicata may not have its full force in a mandamus proceeding. However, there are considerations present here which were not in the O'Brien case. One of these is that the Murphy case was a case at law wherein a judgment was entered. We have been cited to no decision and know of none where issues subject to the rule of res judicata in a case at law resulting in a judgment which has become final can be retried; nor, unless fraud or (in some instances) mistake is established, where enforcement of the judgment can be prevented. Can an issue of laches found not to exist by a jury in the law case, be found to exist by a judge to whom an application is made for a remedy to enforce the judgment on that verdict? As between the same parties, the issues are finally settled by the judgment.

■ Another consideration flows from the firmly established rule that, except to prevent manifest injustice, mandamus cannot be used to secure review open by appeal. Maryland v. Soper [No. 1], 270 U. S. 9, 29, 46 S.Ct. 185, 70 L.Ed. 449. "Except to prevent manifest injustice" refers to the inefficacy of the remedy by appeal. If the petitioner for mandamus cannot substitute mandamus for appeal, why should the respondent be permitted to do so through his response? Why should any party to an action at law be accorded the right to refrain from testing by appeal the validity of a judgment with the certainty that he can try all of the issues over again when the judgment is sought to be enforced?

■ The rule that the allowance of mandamus is governed by equitable principles does not mean that all of the maxims, procedure and practice in equity are imported into mandamus proceedings. · It means the use of the broad basis of a court of conscience that mandamus issues "for preventing instead of promoting injustice." Langevin v. Nicolson, Cust. & Pat.App.,

---

[1] The laches and limitations urged are not based upon and could not be sustained (Bunch v. United States, 8 Cir., 252 F. 673, 678) upon delay between procurement of the Murphy judgment in November, 1936, and the filing of this mandamus proceeding in July, 1938. These contentions are aimed at delay in bringing the Murphy judgment suit in 1932.

394

110 F.2d 687, 696; Duncan Townsite Co. v. Lane, 245 U.S. 308, 311, 312, 38 S.Ct. 99, 62 L.Ed. 309. What injustice exists in applying res judicata to issues finally determined by a judgment at law when the judgment is sought to be enforced by appropriate proceeding? We resolve this contention against appellants.

In what we have determined and have stated above under this issue of laches and limitations, we have borne in mind the particular parties defendant—the County of Dunklin, the Drainage District and the members of the County Court—which are identical in the Murphy action at law and in this mandamus proceeding. As to whether or as to what extent the landowners are bound is not before us and is neither determined nor examined. All that we determine now is that the action of the Court in issuing the mandamus order here involved is not open to any of the errors here urged and, therefore, that the order is affirmed.