BATES COUNTY, MO., v. WILLS et al.

(Circuit Court of Appeals, Eighth Circuit. February 1, 1917.)

No. 4650.

1. DRAINS &#8722;13—DRAINAGE DISTRICT CONTRACT—LIABILITY OF COUNTY—RE-
ORGANIZATION.

Under Act Mo. March 24, 1913 (Laws 1913, p. 263) § 52, authorizing a
drainage district organized under Rev. St. Mo. 1909, §§ 5578-5635, to re-
organize under, Act Mo. March 24, 1913, § 56, requiring the county officers
to turn over the papers of such district to the district officers on comple-
tion of the reorganization, section 57, providing that no reorganization
shall invalidate any indebtedness, liability, or contract incurred by a dis-
trict under its former organization, section 58, providing that proceed-
ings begun under a former act may be completed under the new act, and
that all liens, remedies, and processes for collection of taxes provided for
in the new act shall be available for collection of taxes levied and bonds
issued under the repealed sections, and that no rights or obligations in-
curred by a district or individual shall be nullified or invalidated, and
Act Mo. March 27, 1913 (Laws 1913, p. 281), repealing Rev. St. Mo. 1909, §§
5578-5635, and providing that the repeal and the enacting of new sections
in lieu of those repealed, or in addition thereto, shall not invalidate any
drainage district theretofore organized, and that all contracts, liens, and
obligations issued by such districts shall be valid, and the reorganization
of a district under Act Mo. March 24, 1913, does not relieve the county
from its liability under the former act on the contracts of the district.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 4.]

2. DRAINS &#8722;49—PUBLIC IMPROVEMENTS—LIABILITY—PARTICULAR FUND.

If a municipal or a quasi municipal corporation, which has power to
make a contract for improvements, contracts for them and stipulates that
the contractor shall be paid out of funds realized from special assessments
or bonds, and the corporation though it has power fails to make the as-
sessments or issue the bonds, or misapplies the funds to other purposes, it
becomes primarily liable to pay the contract price, even though the con-
tract expressly provides that the contractor shall accept the assessments
in payment, and that the municipality shall not be otherwise liable.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 59.]

3. DRAINS &#8722;68—PUBLIC IMPROVEMENTS—LIABILITY—AUTHORITY TO CONTRACT.

If a municipal or quasi municipal corporation makes a contract for
internal improvements which it has power to make and does not specify
the source of the fund from which it will pay therefor, and there is no
statutory prohibition of a general levy, the grant of power to make the
contract includes also the power to levy, collect, and pay to the contractor
the contract price.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 72.]

4. DRAINS &#8722;49—DRAINAGE DISTRICTS—LIABILITY OF COUNTY—FAILURE TO
MAKE SUFFICIENT ASSESSMENT.

Under Rev. St. Mo. 1909, §§ 5578, 5580-5584, 5588, 5595-5597, 5601-5603,
empowering the county court, which is the governing body of the county,
to organize drainage districts, to require estimates of the work to be made,
and to confirm or amend those estimates, to cause the engineer to make
contracts for the work, to approve or reject all contracts, which must be
let in sections, and no bids shall be received which exceeds the estimate,
and to issue bonds to meet the expenses of locating and constructing the

ditches which are to be paid for from special assessments, the contractors who constructed a drainage ditch can rely on the contract, and, if the work is completed, the county is estopped to deny liability therefor on the ground that the funds received from the sale of the bonds have become exhausted, and that it has no power to levy additional assessments, since the county had the power to make its estimates and its bond issue large enough to meet the contracts, and if it failed to exercise that power, and has received the benefits from the contract, it cannot be permitted to take advantage of its own failure to perform its duty.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 59.]

5. DRAINS ⬯83—DRAINAGE DISTRICTS—ADDITIONAL ASSESSMENTS—STATUTE.

Under those sections and section 5592, providing that the work shall not be stayed pending appeals from the award of damages, and section 5599, providing that the county shall pay the damages awarded out of its general fund, and that it shall be refunded to the county out of the assessments, the county has the power to levy additional assessments when the first assessment is insufficient to meet the contracts, since the estimates and assessments are made at a time when it is humanly impossible to estimate even approximately the cost, and the Legislature will not be held to have limited the power to levy assessments to a single levy based on a preliminary estimate in the absence of the statutory prohibition against an additional assessment.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 76–81.]

6. DRAINS ⬯49—ACTIONS ON CONTRACTS—REQUESTED INSTRUCTIONS—BURDEN OF PROOF.

In a suit against a county for the balance due on a contract for the construction of a drainage district ditch, where the county relied as one defense on the failure of the contractors to procure the estimates of the engineer as to the quantity of work done, to which the contractors replied that the engineer had withheld the estimates through fraud or such gross mistake as implies fraud or failure to exercise honest judgment, and the only instruction as to the burden of proof was that the burden rested on plaintiffs to establish their claim by a preponderance of credible evidence, and that the same burden rested on defendant to establish its counterclaim, it was reversible error to refuse an instruction requested by defendant that the burden of proving fraud on the part of the engineer in refusing estimates, or his failure to exercise an honest judgment, rested on the plaintiff, and that plaintiffs were required to establish such fraud or failure by a preponderance or greater weight of credible evidence.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 59.]

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action by A. V. Wills and others against Bates County, Missouri. Judgment for the plaintiffs, and defendant brings error. Reversed and remanded, with instructions to grant a new trial.

See, also, 190 Fed. 522, 111 C. C. A. 354.

Frank Hagerman, of Kansas City, Mo. (Thomas J. Smith, of Butler, Mo., on the brief), for plaintiff in error.

John F. Green, of St. Louis, Mo. (William Mumford, of Pittsfield, Ill., Frank M. Lowe, of Kansas City, Mo., and Frederick N. Judson, of St. Louis, Mo., on the brief), for defendants in error.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

PER CURIAM. A. B. Wills, W. V. Wills, and Emmett S. Wills, the plaintiffs below, brought an action against Bates county, Mo., to recover the amount which they alleged that that county owed them for excavating a part of the third section of a certain drainage ditch in that county under a contract between the county and Timothy Foohey & Sons, dated May 2, 1906, which, so far as it concerned the third section of the ditch, Foohey & Sons had assigned to the plaintiffs. In the course of the performance of the contract the plaintiffs encountered stone which they claimed that they were not required to remove under its terms, but the county denied this claim and on August 6, 1908, the plaintiffs and the county made an agreement that the plaintiffs should proceed to remove from the ditch all the material which they conceded they were required to take out under the contract without prejudice to the rights and claims of either party. Under this agreement the plaintiffs removed a large amount of material, but the county declined to pay them for its removal on the ground, among other things, that the original contract provided that the engineer should make estimates of the work done monthly and that 90 per cent. of his estimates should be paid when made respectively, but that no payment should be made until such estimates were made, and that the engineer had never made any estimates of the work done by the plaintiffs under the second agreement subsequent to August 6, 1908. Thereupon, on April 3, 1909, the plaintiffs commenced this action for $58,000, which they alleged that the county owed them for their work in excavating this ditch, and by an amendment to their complaint made before the last trial they alleged in substance that the engineer by a failure to exercise his honest judgment, or by fraud, or such gross mistake as implied bad faith, withheld the estimates of their work to which they were entitled. The county denied liability and the averments of the complaint charging it, upon various grounds, and also pleaded a counterclaim of $40,000 on account of excavation it alleged that it was compelled to make to complete the ditch and on account of expenses it incurred and damages it sustained by reason of the plaintiffs' failure to complete it. At the close of the trial the jury found for the plaintiffs in the sum of $42,609.08, and for the county on its counterclaim in the sum of $11,610.70. A judgment was thereupon rendered against the county for $30,998.31. This case has been twice tried, and a more exhaustive account of its earlier course may be found in the opinion of this court on a review of the first trial in Bates County v. Wills et al., 190 Fed. 522, 111 C. C. A. 354.

[1] Counsel for the county originally maintained that the county was in no manner liable on the contract, that the agreement was that of the drainage district, and that the drainage district alone was liable upon it. But upon consideration this court was of the opinion that the contract was that of the county, that it differed from the general contracts of the county only in the fact that the funds to pay for its performance were to be collected by the county from the property in the drainage district for which the drain was excavated, while those to pay for the performance of its general contracts were to be collected

by the county from all the property in the county. 190 Fed. 526, 111 C. C. A. 354. It is now contended that, although when this contract was made and when this action was brought the county was liable upon the contract and was the only proper defendant to this action, yet the county has been relieved from its contractual relation, or at least from its liability on the contract, and rendered exempt from action and judgment thereon, and the reorganized district has become the only party liable and the only proper defendant here, because the drainage district in which the ditch here in question was excavated was permitted to and did reorganize under the act of the Legislature of Missouri of March 24, 1913. Laws of Missouri 1913, pp. 232 to 267, §§ 52, 56, 57, 58. See, also, Laws of Missouri 1913, pp. 271, 281, § 2, and the act to repeal certain sections of article 4, c. 41, of the Revised Statutes of Missouri 1909, approved March 27, 1913, § 2, p. 281.

But these statutes fail to convince of the soundness of this contention. The drainage district was originally organized under article 4 of chapter 41, which was repealed by the act of March 27, 1913, and since that act it has been reorganized under the act of March 24, 1913. The sections of the act of March 24, 1913, material to this question, provide that any drainage district in Missouri theretofore organized under any laws of that state may be reorganized under that act (section 52), that immediately after such reorganization the county clerk shall turn over to the secretary of the drainage district the papers and records belonging to the district and the county treasurer shall transfer the funds of the district to him (section 56), that no reorganization shall invalidate any indebtedness, liability, or contract of any nature incurred by a district under its former organization, but all such indebtedness, liability, or contract shall attach to and become the debt or liability of the new organization (section 57), and that when proceedings have been begun under the provisions of the sections repealed by the act of April 8, 1905 (Laws 1905, p. 190), they may be proceeded with and completed under the new act, that all liens, remedies, and processes for the collection of taxes provided for in the new act shall, so far as applicable, be available for the collection of taxes levied and bonds issued under the sections repealed, and when drainage districts have been incorporated under sections repealed, and the work of drainage has been commenced or completed in whole or in part, no rights or obligations incurred by district or individual shall be nullified, invalidated, or for naught held (section 58). The act of March 27, 1913, which repeals certain sections of article 4 of chapter 41 of the Revised Statutes of Missouri 1909, under which this drainage district was originally organized, provides that the repeal of sections specified in section 1 of that act and the re-enacting of other sections in lieu of the sections repealed, and the enacting of new sections in addition thereto, shall not have the effect of invalidating, suspending, or vitiating any drainage district heretofore organized, or any proceedings now pending in any of the courts of the state for the organization of any drainage district under article 4 of chapter 41, and that all contracts entered into, all liens established, and other obliga-

tions created, including warrants and bonds issued by drainage districts heretofore organized under the provisions of said article 4 of chapter 41, are hereby declared to be valid, and the county courts shall levy sufficient tax to pay all such forms of indebtedness. Section 2, Act of March 27, 1913, Laws of Missouri 1913, p. 281.

When these acts were passed, the county of Bates was liable to the plaintiffs under the contract here in suit, the plaintiffs had a right of action upon this contract, and this action had been brought against the county to enforce that liability. Unless there was some constitutional enactment in these laws which deprived the plaintiffs thereof, that liability and their right of action against the county thereon still exist. A careful reading of the entire acts has disclosed no such enactment. The portions of them which have been stated and the entire laws when read and considered in their entirety have convinced us that they did not take away or diminish that liability or the plaintiffs' right of action to enforce it, but that the Legislature of Missouri intended to, and did thereby, preserve the liability of the county to the plaintiffs upon this contract, the liability of the persons and property in the drainage district to pay the necessary taxes to discharge that liability, and the power and duty of the county to levy, collect, and pay over to the plaintiffs such necessary taxes for that purpose.

[2] Counsel for the county, however, insist that it has become exempt from liability on this contract and has exhausted its power to levy and collect assessments upon the property in the drainage district to pay the amount it owes the plaintiffs because it has already expended all the moneys, some $370,000, which it derived from the sale of the issue of bonds equal in amount to the aggregate of the assessments to pay for the ditch which it levied on the property of the drainage district before the work was done or the damages for taking of property were fixed. A deliberate consideration of the arguments and authorities in support of this position has failed to convince that it is tenable: (1) Because the county is not prohibited from making, but is in our opinion empowered by the statutes of Missouri to make, the assessments necessary to pay for the ditch whether the funds derived from the sale of the issue of bonds have been exhausted or not. Revised Statutes of Missouri 1909, §§ 5579–5583, 5596, 5598, 5599, 5603; State ex rel. v. Bates, 235 Mo. 262, 283, 284, 285, 286, 138 S. W. 482; State ex rel. v. Holt County Court, 135 Mo. 533, 545, 546, 547, 37 S. W. 521; Sheridan v. Fleming, 93 Mo. 321, 324, 325, 5 S. W. 813. (2) Because the statutes of Missouri gave the county the absolute control of all the proceedings for the excavation of and the payment for the ditch, the levy and collection of the money to pay for it, imposed upon the county the duty and invested it with plenary power lawfully to do all these things so that if it has failed, or shall fail, to levy and collect from the property in the drainage district the requisite funds to pay for the ditch, that failure has resulted, or will result, not from a lack of authority or power in the county to do so, but from the failure of the county lawfully to exercise the power granted to it. Any municipal or quasi municipal corporation which has the corporate power to make

and to perform a contract, which makes it and receives and keeps the benefits of its performance by the other party to it, is thereby estopped from defeating performance on its own part on the ground that it either negligently or fraudulently failed to exercise in a lawful manner the powers it had fully to perform its part of the agreement. Simpson v. Stoddard County, 173 Mo. 421, 466, 73 S. W. 700; Speer v. Board of County Com'rs, 88 Fed. 749, 758, 32 C. C. A. 101, and cases there cited; Wilson v. Drainage District, 257 Mo. 266, 289, 290, 165 S. W. 734; Illinois Trust & Sav. Bank v. City of Arkansas City, 76 Fed. 271, 293, 294, 295, 22 C. C. A. 171, 193, 194, 195, 34 L. R. A. 518; Union Pacific Ry. Co. v. Chicago, Rock Island & Pac. Ry. Co., 51 Fed. 309, 326, 328, 2 C. C. A. 174, 186; Sioux City Terminal Railroad & Warehouse Co. v. Trust Company of N. A., 82 Fed. 124, 137, 27 C. C. A. 73, 86. (3) Because if a municipal or quasi municipal corporation which has the power to make a contract for internal improvements contracts for them and stipulates that the agreed price of the improvements shall be paid to the contractor out of funds to be realized out of special assessments, or, out of the proceeds of bonds it has the power to issue, and the corporation has power to make the assessments or to issue the necessary bonds but fails to make sufficient valid assessments, or to issue sufficient bonds to provide the necessary funds to pay the contractor the contract price of his material and labor, or if it misappropriates such funds to other purposes, the corporation becomes primarily liable to pay the contract price itself. Barber Asphalt Paving Co. v. City of Denver, 72 Fed. 336, 340, 19 C. C. A. 139, 143; Bill v. City of Denver (C. C.) 29 Fed. 344; Argenti v. City of San Francisco, 16 Cal. 256, 281, 283; Beard v. City of Brooklyn, 31 Barb. (N. Y.) 142, 150; Commercial National Bank v. City of Portland, 24 Or. 188, 33 Pac. 532, 41 Am. St. Rep. 854; City of Louisville v. Hyatt, 5 B. Mon. (Ky.) 199, 201; City of Leavenworth v. Mills, 6 Kan. 288, 297; Reilly v. City of Albany, 112 N. Y. 30, 42, 19 N. E. 508; Michel v. Police Jury, 9 La. Ann. 67.

[3] In cases of this character the municipality or quasi municipality becomes primarily liable even when the contract expressly provides that the contractor shall accept the assessments in payment of the contract price and that the municipality shall not be otherwise liable, whether the assessments are collected or not. Barber Asphalt Pav. Co. v. City of Harrisburg, 64 Fed. 283, 12 C. C. A. 100, 29 L. R. A. 401; City of Chicago v. People, 56 Ill. 327, 334; Commercial National Bank v. City of Portland, 24 Or. 188, 33 Pac. 532, 41 Am. St. Rep. 854. And if a municipal or quasi municipal corporation which has the power to make a contract for internal improvements contracts for them and stipulates that the agreed price thereof shall be paid to the contractor without any specification of the source from which it will derive its fund to do so, and there is no statutory prohibition of a general levy upon the property within its borders, the legal inference is that the grant of the power to make the contract also granted to it the power to levy, collect, and pay over to the contractor the funds necessary to pay the agreed price of the labor and material the contractor furnished.

United States v. Saunders, 124 Fed. 124, 128–131, 59 C. C. A. 394; Loan Ass'n v. Topeka, 20 Wall. 655, 660, 22 L. Ed. 455; United States v. New Orleans, 98 U. S. 381, 393, 25 L. Ed. 225; Ralls County Court v. United States, 105 U. S. 733, 735, 736, 26 L. Ed. 1220; United States v. Clark Co., 96 U. S. 211, 24 L. Ed. 628; Commonwealth v. Commissioners of Allegheny Co., 37 Pa. 277, 290; Lowell v. Boston, 111 Mass. 454, 460, 15 Am. Rep. 39; State ex rel. Hasbrouck v. Milwaukee, 25 Wis. 122.

[4] The county court was the body which governed the county, and the county had all the corporate power which the Legislature vested in the county court. The county court was empowered (see Statutes of Missouri 1909) to cause to be constructed any ditch within its county "when the same shall be conducive to the public health, convenience or welfare, or where the same will be of public utility or benefit" (section 5578), to appoint, when a suitable petition for such a ditch was filed with it, three freeholders to ascertain and report to it, pursuant to its order, whether or not the proposed improvement was "necessary, practicable and would be of public utility or conducive to the public health, convenience or welfare" (section 5580), to hear, after notice to the parties interested, and to determine whether or not the improvement should be made, and if it decide that it should be made, then to determine the lands that would be benefited thereby, which by the fiat of the statute constitute a drainage district (sections 5581, 5582, 5583). If the county court decided to make the improvement, it had the power to appoint three freeholders to estimate the cost of the work, to make a schedule of the lots and lands benefited or damaged thereby, and to present a report thereof to the court (section 5584), to hear, after notice to parties interested, this report, and "if it appears to the court that the estimates of the cost of location and construction and of damages and benefits to each tract is fair and just, to confirm the report," otherwise to amend it (section 5588), if it confirms or amends the report, to proceed with the work, notwithstanding appeals have been taken and are pending in the district court as to the amount of damages awarded (section 5592), to fix the time and place of letting contracts for the work after public notice thereof, and to "cause the engineer * * * to attend the sale, offer the work and receive the bids, make contracts on behalf of the county with the lowest responsible bidder" (section 5595), and to "approve or reject all contracts." All contracts must, according to the statute, be let in sections not less than the number of lineal feet apportioned to each separate lot or tract of land, and "no bid shall be entertained which exceeds the estimated cost of location and construction of the work." Section 5596. It will be noticed here that this limitation on the amount of each bid does not limit the aggregate of the bids, and, even if it could be construed to have that effect, leaves the county court to permit bids as high as it chooses by making the estimates high enough to cover them. Upon the failure of the contractor to complete the work, the county court is empowered to relet the work not performed. Section 5597. It is also authorized

to determine in what number of installments the assessments and the interest thereon shall be paid, and the rate of interest the installments shall bear. Section 5601. It is authorized to apply the installments and the interest thereon to the payment of the bonds it issues (section 5602), and to issue bonds and sell the same to meet the expenses of locating and constructing any ditch or improvement under the provisions of this article, "which bonds shall mature, at annual intervals, commencing after a period of two years, for not exceeding twenty years, bear interest at not to exceed six per cent per annum and be payable semi-annually at the office of the county treasurer" (section 5603).

This brief review of the grant of authority to the county discloses the fact that plenary power was given to it to make the contract for the construction of this ditch, to control, conduct, and determine every preliminary step which led up to the contract and which, if properly performed, made it valid and enabled the county to raise the funds to discharge all liability under it, to decide whether or not the improvement should be made, to decide what the true estimate of the cost of the location and construction of the ditch was, what the amounts of the damages to be paid and of the assessments to be made and collected should be, and what amount of bonds should be issued. If the county had made its estimate of the cost of the work sufficiently large, its assessments sufficiently high, or if it had sold a sufficient amount of bonds and had applied the proceeds it could have lawfully obtained to the discharge of the contract here in suit, it would have had sufficient funds to pay its debt to the plaintiffs. The statute placed no limit upon the estimate of the cost of the improvement, and hence none upon the amount of bonds it could issue, none upon the amount of assessments it could levy and the duty and the responsibility to so estimate the cost, so fix the amount of the assessments, and so determine the amount of the bonds as to provide the funds to pay its contractors the amount lawfully due them under the contract it made with them, rested upon it alone, and as the contractors were charged with no notice, duty, or responsibility in these regards, but had the unquestioned right to rely upon the contract the county had tendered to and made with them, and the county has received and kept the benefits of plaintiffs' performance of the contract, the county is estopped from defeating the plaintiffs' claim and judgment against it on the ground that it failed to take the legal steps which it had the power and which it was its duty to take to provide the funds to pay it. On this ground the county is liable generally for this claim even if it now has no power to levy special assessments upon the property in the drainage district to pay it, and if a judgment is rendered against it at the next trial it should not be so limited as to be payable only from funds raised, or to be raised, by benefit assessments upon property in drainage district No. 1, Bates county, Mo.

[5] But in our opinion the county has the power to levy and collect assessments upon the property in that district sufficient to pay the debt it owes the plaintiffs on this contract. It is true that in Sheridan

v. Fleming, 93 Mo. 321, 324, 325, 5 S. W. 813, and in other cases of that special class, express power to make additional assessments, when the first was insufficient, was granted to the county. But the grant to the county of the power to make and collect the necessary assessments to raise the money to pay for the performance of a contract is, in the absence of statutory prohibition, necessarily inferred and legally presumed from the grant of the power to a quasi municipal corporation, or a municipal corporation, to make the contract for internal improvements. United States v. Saunders, 124 Fed. 124, 128–131, 59 C. C. A. 394, and cases cited. There is no express or implied prohibition of any such assessments in the statutes of Missouri, and those statutes, when carefully read, demonstrate the absolute necessity to the practical working of the plan they adopt of the power to make such assessments. The only criterion to determine, before the location and construction of the ditch, the necessary amount of the assessments, is the amount of the estimate of the cost of the work plus the estimate of the amount of the damage, both of which are required by this statute to be made before the contract for the work is let. The parties damaged had the right to appeal to the district court from the awards, and it was reasonably certain that some of them would increase their awards, and yet the statute provides that the work shall not be stayed but shall proceed pending the appeals. Section 5592. It provides that the county shall pay the damages out of its general fund and that this shall be refunded to the county out of the proceeds of the assessments (section 5599), and that the bonds issued shall be paid from the proceeds of the assessments and of the interest thereon (section 5602). It provides that the assessments shall be payable in such a number of installments as the county court shall determine and that the bonds shall draw interest at not exceeding 6 per cent. and shall mature at annual intervals, commencing after a period of 2 years, for not exceeding 20 years. And it provides that the county, in cases wherein the contractor fails completely to perform his contract, shall have power to relet the part unperformed to other contractors. Section 5597. It is obvious that finite minds could not make even an approximately correct estimate of the amount that would be required to pay the cost and expenses that would result from the location and construction of such a ditch as this before the contracts were let or the damages to lands determined, or the number of the installments of the assessments, the times when due, the rate of interest thereon, the amount of the bonds, the dates of their maturities, the rate of interest they were to bear, and the number and character of the failures of contractors to perform were known, and this court is convinced that the Legislature not only did not limit, but also that it did not intend to limit, the power of the county court to levy assessments on the property in this drainage district to a single assessment based on such a preliminary estimate made before the work was done or the damages fixed, or the amounts of interest to be paid and collected could be known. This action against this county cannot be defeated on the ground that it was or is without power to make and collect the necessary assessments up-

on the property in this drainage district to pay any judgment that may be recovered against it upon the contract here in suit.

[6] One of the defenses which were pleaded was that by the terms of the contract the plaintiffs were not entitled to recover until they received from the engineer his monthly estimates of the contract price of the work done and materials furnished by them after the second contract was made, and that they had never received any such estimates. The reply to this defense was that the engineer had withheld the estimates to which the plaintiffs were entitled by fraud, or by such a gross mistake as implies fraud, or arbitrarily by a failure to exercise an honest judgment. Upon this issue the evidence was conflicting, but there was substantial evidence that the engineer withheld the estimates arbitrarily through a failure to exercise an honest judgment. It is assigned as error that the court refused a request to charge the jury that:

"The burden of proving fraud on the part of Bell, the engineer, in refusing estimates to the plaintiffs, or that he in so doing did not exercise an honest judgment in so refusing, rests upon the plaintiff. To authorize a finding in plaintiffs' favor upon this question plaintiffs are required to establish such fraud or failure to exercise an honest judgment by a preponderance or greater weight of credible evidence."

The only reference to the burden of proof on the issue of the engineer's fraudulent or arbitrary refusal to allow estimates found in the charge of the court is this sentence:

"The burden of proof is upon the plaintiffs to establish their claim by a preponderance of the credible evidence in the case, and likewise the same burden is upon the defendant to establish the damages prayed for in its counterclaim."

The question whether the engineer withheld the monthly estimates of all work done and materials furnished by the plaintiffs after the second agreement, in the exercise of an honest judgment, or arbitrarily not through the exercise of an honest judgment, or fraudulently or through a mistake so gross as to imply fraud, was one of the most important issues, if it was not the most important, in the trial below. It is a general and salutary rule that where a charge states general rules of law governing the case, but fails to set forth a specific and crucial issue which the jury must determine, and to apply the law to that issue, either party, upon request, is entitled to additional instructions which tersely and clearly state such issue and the law applicable thereto. The refusal to submit the required instruction was in our opinion a violation of that rule and fatal to the trial of this case. Northern Central Coal Co. v. Hughes, 224 Fed. 57, 59, 139 C. C. A. 619, 621; Babbitt v. Bumpus, 73 Mich. 331, 41 N. W. 417, 419, 16 Am. St. Rep. 585; 11 Encycl. of Pl. & Pr. 298, 299; Cleveland, C., C. & St. L. Ry. Co. v. Baker, 91 Fed. 224, 227, 33 C. C. A. 468; Texas & Pac. Ry. Co. v. Short (Tex. Civ. App.) 58 S. W. 56, 58; Muldowney v. Illinois Central Ry. Co., 39 Iowa, 615, 619, 620; Parkhill v. Town of Brighton, 61 Iowa, 103, 108, 109, 15 N. W. 853; Lamar v. State, 64

Miss. 328, 1 South. 354, 355; Gerdine v. State, 64 Miss. 798, 2 South. 313, 314.

The judgment below must therefore be reversed, and the case must be remanded to the District Court, with instructions to grant a new trial, and it is so ordered.

---

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes