## BATES COUNTY, MO., v. WILLS et al.*

(Circuit Court of Appeals, Eighth Circuit. November 24, 1920.)

No. 5162.

1. **Drains ⊂⊃20—Drainage district not "corporation," with capacity to sue and be sued.**

   Drainage districts, created under statutory authority by county boards for special tax purposes only, unless expressly made so by the statute, are not corporations, with capacity to sue and be sued.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Corporation.]

2. **Drains ⊂⊃49—Facts held not to change county's liability on express contract in writing.**

   That plaintiffs refused to remove rock material from a drainage ditch constructed by them under a written contract with defendant county, erroneously claiming that it was not within the contract, and that in an action to recover the contract price the county by counterclaim recovered the excess cost of such removal by a subsequent contractor, *held* not to change the nature of the county's liability to plaintiffs, which was on an express contract in writing, within Const. Mo. art. 4, § 48, and Rev. St. Mo. 1909, § 2778.

3. **Counties ⊂⊃225—Judgment against county may specify fund from which payable.**

   Where a county contracted for drainage work on behalf of a drainage district created by the county court as provided by statute, the land within which was to be subjected to special tax to pay for the work, and an action on the contract was brought against the county in a federal court, the judgment properly provided that it was to be paid from the fund raised by special assessment of benefits on the land within the drainage district.

4. **Drains ⊂⊃49—Liability of county on contract for drainage work held not affected by previous collection of tax levied for benefits.**

   It is not an objection to a judgment against a county on a contract for drainage work to be paid from the fund raised by a special tax on the lands of the drainage district that the county has previously collected the tax levied for benefits assessed against the lands and expended the money, where, as by Laws Mo. 1913, p. 271, the state statute expressly provides for an additional assessment when necessary to pay valid obligations of the district.

5. **Drains ⊂⊃49—Refusal of certificate of engineer as to completion of work held not to prevent recovery by contractor.**

   Under a contract with a county for drainage work requiring the contractor to obtain certificates from the engineer as to completion of the work in accordance with the contract and making his decision final, refusal of certificates by the engineer *held* not to prevent recovery by the contractor, where such refusal was not in the exercise of his own judgment, but in obedience to instructions of the county court.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 254 U. S. —, 41 Sup. Ct. 375, 65 L. Ed. —.

**6. Damages ⬤═68—Plaintiff may not have interest on amount abated for his nonperformance.**

Where, in an action against a county on a contract for drainage work, it was determined that plaintiffs' claim was subject to abatement because of work not done, and which was subsequently done by the county, plaintiffs *held* entitled to interest from the date of suit only on the amount of its claim less the cost to the county of such work, without regard to the time when such cost was expended.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action at law by A. V. Wills and others, partners as A. V. Wills & Sons, against Bates County, Mo. Judgment for plaintiffs, and defendant brings error. Modified and affirmed.

Frank Hagerman, of Kansas City, Mo., for plaintiff in error.

John F. Green, of St. Louis, Mo. (F. N. Judson, of St. Louis, Mo., Frank M. Lowe, of Kansas City, Mo., and William Mumford, of Pittsfield, Ill., on the brief), for defendants in error.

Before HOOK, Circuit Judge, and TRIEBER, District Judge.

HOOK, Circuit Judge. This action was brought by A. V. Wills & Sons to recover from Bates county, Mo., a balance claimed to be due them on contract for digging a drainage ditch. The course of the litigation may be found in Wills v. Bates County (C. C.) 170 Fed. 812; Bates County v. Wills, 111 C. C. A. 354, 190 Fed. 552; Id., 118 C. C. A. 361, 200 Fed. 143; Id., 152 C. C. A. 571, 239 Fed. 785; Id., 158 C. C. A. 22, 245 Fed. 556. At the last trial, and in those previous, the plaintiffs prevailed, and the county prosecuted error. The questions presented may be grouped under three general heads, although in considerable measure they occupy the same ground: (1) The corporate liability of the county; (2) the failure of the plaintiffs to obtain estimates of the engineer in charge; and (3) the matter of interest on the amount found due.

[1] *The Liability of the County.* It is urged that the drainage district established by the county court was itself a suable corporation, and that the liability, if any, was upon it, not the county. This contention was held unsound by the District Court when the case first arose, and by this court on the first and second appeals. It is again presented. Even if the question were at large, we would have no doubt of the correctness of those decisions. The drainage statutes in force when the contract was made and the work entered upon authorized the county courts of counties of Missouri to establish or organize drainage districts, not as corporate bodies, but as territorial districts, comprising lands which should be drained for reasons of public health, convenience, or benefit. The corporate action under the statutes was that of the counties, through their respective county courts. The provision that the cost of the work should be raised by special assessments upon the lands found to be benefited created no different status from that of the ordinary case of a street improvement in a city, where the cost is charged upon abutting property. Each is a species of

---

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

taxation for a public purpose. Sometimes the Legislature itself definitely prescribes the area to be charged, as, for example, the property abutting on a street; and in other cases, as here, the power to determine the area and to apportion or distribute the cost among the lands embraced in it according to the particular benefits received is committed to the ordinary municipal subdivisions of the state, that is, to the counties or the cities. In neither case, more than in the other, does the establishment of the taxing district make of it a corporation, with capacity to sue and be sued, without clear language to that effect in the statutes.

The contract under which plaintiffs' cause of action arose was made May 2, 1906. An amendment of the statutes in 1907 provided that drainage districts should be bodies corporate, with capacity to sue and be sued; but it was prospective in operation and did not, if it could, affect preexistent contractual relations. A still later statute, passed in 1913, provided for the reorganization of previously existing drainage districts, with corporate powers, equipment of officers, etc., and the district here in question availed itself of the provisions. But the rights of the parties had become fixed; this action was begun in 1909. The effect of the act of 1913 was fully discussed by this court on the last appeal (152 C. C. A. 571, 239 Fed. 785), and it was held not to have destroyed the rights of the plaintiffs or their pending action, but to have preserved them instead. We see no reason for disturbing that conclusion.

[2] Again, it is contended that under the Constitution and laws of Missouri a county cannot be held liable, except upon an express contract in writing (Const. art. 4, § 48; Rev. Stat. 1909, § 2778), and that the action here is for a quantum meruit, and not upon a written contract, as required. The facts by which this contention is to be determined are as follows: On May 2, 1906, a written contract for a larger and more extensive drainage work in Bates county was executed by the engineer in charge and Timothy Foohey & Sons. As the statute provided, the execution of the contract by the engineer was "on behalf of the county." On the same day Foohey & Sons assigned to plaintiffs that part of the contract covering what was termed section 3 of the main ditch. The original contract specified that it was subject to the approval of the county court of Bates county, and it was duly approved. The assignment to plaintiffs was by its terms also subject to the approval of the county court. A copy of it, executed as an original, was filed with that body, which thereafter dealt with plaintiffs in all substantial respects as though they were original contractors for the section of the work they undertook. Our attention is directed to no statute forbidding the assignment, nor was there any provision to that effect in the original contract itself. The legal status of the plaintiffs as to section 3 of the main ditch was therefore that of original contractors in a written contract.

Section 3 of the main ditch was about 4¼ miles in length. It began at the Marias de Cygne river and ended at the Osage river. When plaintiffs had excavated the ditch to the (bottom) grade line for about two miles they encountered a rock formation, which they claimed they

were not required to remove, because its existence was not disclosed in certain preliminary borings, and also because it could not be removed by steam dredge, which they contended was the implement contemplated by the contract. This contention was denied by the county court. Thereupon on August 6, 1908, they appeared before the county court, and (with the consent of Foohey & Sons) an agreement with that body was entered in its records that plaintiffs should continue with the work as theretofore done by them, without prejudice to the rights of either party or waiver of their respective positions. The plaintiffs then resumed work, and by April, 1909, completed the excavation of the ditch according to their construction of the contract. On April 3, 1909, they brought this action to recover the contract compensation for the work done after the agreement of August 6, 1908, and also the retained percentage for work previously done and accepted. The trial court held they were entitled to recover the full amount, regardless of their failure to remove the nondredgible rock from the ditch. On September 21, 1911, this court reversed the judgment of the trial court. We held that the contract required plaintiffs to remove the rock, and that the agreement of August 6, 1908, with the county court, did not relieve them from that obligation. 111 C. C. A. 354, 190 Fed. 522.

Other questions were also involved and decided, but they are not important on the point now being considered. In the meantime the county contracted in writing with other parties to remove the material left in the ditch by plaintiffs, and the work was done while this case was pending. The cost was set up by the county in defense and by counterclaim, and the excess of such cost over plaintiffs' contract compensation, had they done the work, was ascertained at the trial, and has been charged to them and deducted from their recovery in the judgment now under review. We are of the opinion that the liability of the county was fixed by written contract within the requirement of the state constitution and statute. The county was not held upon an oral agreement, or implied contract, or for the reasonable value of services performed or work done, as distinguished from express contractual stipulations. In a broad sense the last contract under which the rock was removed was for the account of the plaintiffs, and the result, the increased cost, was charged to them. In no view did the county do anything except by written contract, and that is what the statute required. The county was held to no other measure, and it suffered no greater or different liability.

[3] Under the authority of the statutes in force at the time of the contract, the county, as already observed, acted for a subdivision of its territory which it had established, and not for itself at large. Its liability was therefore special, not general. The judgment against the county which is now under review provides in express terms that it is "to be paid and discharged from and out of the fund raised or to be raised by benefit assessments upon and against the land" in the drainage district mentioned. Objection is made to this form of judgment. Passing for the moment the question of future assessments, we think the language employed sufficiently expresses the special character of the liability of the county. A similar objection was made in New Orleans

v. Warner, 175 U. S. 120, 146, 20 Sup. Ct. 44, 44 L. Ed. 96, to a decree against the city on warrants issued for a drainage plant. The court referred to a provision of the decree that it should be paid out of drainage assessments, etc., and declared the objection more apparent than real. In principle the case here does not differ from County of Cass v. Johnston, 95 U. S. 360, 24 L. Ed. 416, which involved coupons from railroad aid bonds issued by a county in Missouri for and on account of a township. The court said:

"It is finally objected that, as the bonds are in fact the bonds of the township, no action can be maintained upon them against the county. Without undertaking to decide what would be the appropriate form of proceeding to enforce the obligation in the state courts, it is sufficient to say that in the courts of the United States we are entirely satisfied with the conclusions reached by the court below, and that a judgment may be rendered against the county, to be enforced, if necessary, by mandamus against the county court, or the judges thereof, to compel the levy and collection of a tax in accordance with the provisions of the law under which the bonds were issued."

It is also said that the bonds that were issued and sold by the county court to raise funds immediately for the improvement purported on their face to be bonds of the drainage district. But that should be taken as descriptive of the special relation of the county, and not as a designation of the corporate contractor. The legal promisor is determined by the statutes back of the bonds. The statutes in their entirety determine the status of the obligations. The cases of Davenport v. County of Dodge, 105 U. S. 237, 26 L. Ed. 1018, United States v. Dodge County, 110 U. S. 156, 3 Sup. Ct. 590, 28 L. Ed. 103, Blair v. Cuming County, 111 U. S. 363, 4 Sup. Ct. 449, 28 L. Ed. 457, and Nemaha County v. Frank, 120 U. S. 41, 7 Sup. Ct. 395, 30 L. Ed. 584, involved statutes of Nebraska which authorized counties and cities to issue bonds in aid of works of internal improvement. Any precinct in an organized county was also authorized to vote such aid, and in such event the county commissioners, having the same relation to the county as the county court has to a county in Missouri, were empowered to issue special bonds for the precinct and levy taxes to pay them on the property in the precinct. It was held that actions on the bonds were properly brought against the county, and in form the judgment would be against it, to be collected by a tax on the taxable property in the precinct; and this though the promisor in the bonds was the precinct. Blair v. Cuming County, supra.

[4] Objection is also made to the alternative provision in the judgment that it should be paid or discharged from funds "to be raised" by benefit assessments against the lands in the drainage district. In support of this objection it is said that benefit assessments against the lands in the district, amounting to $370,000, were duly made; that that sum was the total estimated cost of the proposed work; that drainage bonds of the face value of $355,000 were duly executed and sold at a premium sufficient to realize the estimated cost, the bond purchaser requiring that the premium be used to reduce the amount of the bonds issued, which was done; that all the proceeds of the bonds have been disbursed for drainage work in the district, and there is now no

power or authority under the statutes for other or further assessments. If this be so, it is manifest that a most inequitable and unconscionable result would follow. It appears that, after charging the plaintiffs with the increased cost paid a later contractor for removing the nondredgible rock—that is to say, with the cost in excess of the contract rate with plaintiffs—there is a balance due plaintiffs of $38,057.69, exclusive of interest. No extras for additional work are in this amount. It represents work actually done by plaintiffs on an essential, vital part of the drainage improvement at rates of compensation specified in a contract made at the beginning of the enterprise. The drainage district has received the benefit expressly contracted for, and at a cost which does not exceed the contract amount. This should have been in contemplation, and provision made for it in the disbursement of the moneys. But in effect the county now says the fund has been exhausted for other drainage work in the district, in which plaintiffs did not participate, and that the plaintiffs are therefore without remedy, either for a judgment establishing a liability, or, if one be awarded, then for assessments "to be" levied for its payment. Of course, statutory limitations must be observed; but, if they afford a reasonable way to avoid such a result, it should be taken.

The county relies upon State v. Redman, 270 Mo. 465, 194 S. W. 260, for lack of authority for future assessments after the first assessments have been shown to be insufficient. On the other hand, the plaintiffs cite the Missouri statute of 1913 (Laws 1913, pp. 271, 281), as authority for additional levies. In the case cited the additional levy in controversy was made in 1912 without notice to the landowner. The Supreme Court of Missouri declined to regard the subsequent act of 1913 as a binding legislative construction of the laws in force when the levy was made or to give it retroactive effect. The judgment had been obtained, but there was no authority for the particular remedy at the time it was employed. There was no decision that after authority was conferred by the act of 1913 an additional levy could not then be made. As to this see McWilliams v. Drainage District (Mo. App.) 224 S. W. 35.

The distinction between the Redman Case and the one at bar is plain. Here the words of the judgment to which objection is made contemplate future levies under the act of 1913, or any other law in force at the time they are made. Section 2 of the act of 1913 provides:

"All contracts entered into, all liens established and other obligations created, including warrants and bonds issued, by drainage districts heretofore organized under the provisions of said article 4 of chapter 41, are hereby declared to be valid, and the county courts shall levy sufficient tax to pay all such forms of indebtedness."

The act also declares that the amendments contained in it shall be deemed to be remedial in their character and shall be liberally construed by the court. The above provisions are applicable to the case at bar, and without more dispose of the objection stated. If the exhaustion or depletion of the fund first raised does not destroy the remedy, a fortiori it is no defense against a judgment on the claim itself. Hipple v. Bates County, Mo., 138 C. C. A. 436, 223 Fed. 22, in this court, was an

action against the county on tax bills issued by, the city of Butler for grading and paving city streets, upon which property of the county abutted and for which it was liable by statute. It was urged in defense there, as here, that the funds available had been exhausted, but judgment was directed upon the facts stipulated. We said:

"When the proceedings in the city council progressed to the awarding of the contract, the rights of the contractors to payment could not be defeated by the expenditure thereafter of applicable county funds. Otherwise, a contract valid in all respects when made could be nullified by the subsequent acts of the statutory debtor."

[5] *The Failure of the Plaintiffs to Obtain Estimates from the Engineer in Charge.* Some aspects of this subject were considered on the former appeals, and the views then expressed need not be repeated further than necessary to present the points now made. The contract provided for monthly estimates of work done and accepted, and for payments to the contractor accordingly, less 10 per cent. to be retained until final completion. This course was pursued as to the work performed before the dispute over the nondredgible rock, but after August 6, 1908, when plaintiffs and the county court made their agreement with respect to the resumption of the excavation estimates were refused. At the last trial the court construed the provisions of the contract making the engineer an umpire or arbiter as referable only to monthly estimates, and it instructed the jury that the engineer's decision in refusing such estimates was final, except in case of fraud, or such gross mistake as implied bad faith, or a failure to exercise an honest judgment, the burden of proving which was on the plaintiffs. The instructions about the exception were elaborate and were correct. There was substantial evidence that the engineer, in refusing the estimates, did not exercise his own judgment, but deferred wholly to the directions and instructions of members of the county court; and the jury found the issue for the plaintiffs. The evidence and the verdict bring the case within the exception to 'the rule as to the finality of the action of an engineer upon whom a contract confers the power of a binding decision.

It is now urged that the contract required also a final estimate and a certificate of completion by the engineer, as distinguished from monthly estimates and acceptances of parts of the work as it progressed. If this were so, which is quite doubtful, the cause of the withholding of the former was involved in and determined with the refusal of monthly estimates and acceptances. This applies also to the further contention that the statutes required a final certificate of the engineer of the completion of the work, and an audit based thereon by the county court, before the plaintiffs were entitled to payment. In view of the refusal of monthly estimates and acceptances of the work as it progressed, the reasons of the refusal, and the denial by the county of any liability whatever to the plaintiffs, it would have been an idle ceremony for them to have sought a final certificate and audit. To require those things as conditions precedent would be to give effect to a wrongful denial of liability upon other grounds.

[6] *The Question of Interest.* When the action was brought the compensation for work done by plaintiffs at contract rates, less payments previously made them, and less the 10 per cent. the county was authorized to retain during the progress of the work, amounted to $38,057.69. On the other hand, the excavation of the rock which plaintiffs did not remove cost the county $21,031.82 more than the plaintiffs' contract allowed for that work. The county, however, had in its hands the retained 10 per cent. of plaintiffs' compensation, amounting to $11,026.75, which, applied on the excess cost of the rock excavation, left a balance of $10,005.07 chargeable to plaintiffs' account. The trial court allowed plaintiffs the $38,057.69, with interest from April 3, 1909, the date the action was brought; it allowed the county the $10,005.07, with interest from September 20, 1911, the mean average date of its disbursements; and it awarded the plaintiffs judgment for $44,170.50, that being the difference between those sums plus their interest. We think interest on the $10,005.07 should have been allowed from April 3, 1909, not so much as interest on that sum, as to counterbalance an equal amount of interest on plaintiffs' claim at the date of the action. Plaintiffs' claim was on contract, liability on which was wrongfully repudiated by the county, and the bringing of the action was regarded as a demand for payment, which started interest. But the amount of plaintiffs' claim was found to be excessive by $10,005.07. Interest is an incident of debt; but the $10,005.07 was not so much a debt due the county as it was an ascertained abatement to that extent of the compensation due the plaintiffs on the drainage contract. It did not arise from something foreign to the contract, but grew out of and appertained to it. That the precise amount was not ascertained until the county let a contract for the rock work was not its fault. This difference in interest amounts to $1,479.07 and the judgment should be reduced by that amount. The amounts and dates entering into the calculation appear in a written stipulation of facts. The judgment may therefore be modified, without remand of the case for another trial.

The other contentions on behalf of the county need not be recited. We do not regard them as sufficient. Following the course in the trial court, we have considered only the special liability of the county. We have not considered, and do not determine, whether it also incurred a general one.

The judgment in favor of the plaintiffs is modified, by reducing the amount to $42,691.43, as of December 14, 1917, and, as so modified, it is affirmed.