MURPHY v. DUNKLIN COUNTY, MO., et al.
No. 677.

District Court, E. D. Missouri, S. E. D.
Nov. 28, 1936.

Oliver & Oliver, of Cape Girardeau, Mo., and Charles & Trauernicht, of St. Louis, Mo., for plaintiff.

Elbert L. Ford and John T. McKay, both of Kennett, Mo., for defendants.

DAVIS, District Judge.

Plaintiff, a resident of Illinois, instituted this action at law on December 30, 1932, against the County of Dunklin, and the judges of the county court thereof. The petition contains many counts, each based upon a bond or an interest coupon, issued by said county court for the construction of a drainage system in district No. 4 in said county. The parties waived a jury.

The facts were stipulated as follows:

"(1) That plaintiff, Joseph D. Murphy, is a resident of the State of Illinois, residing in the City of Chicago, Cook County.

"(2) That defendant Drainage District No. 4 of Dunklin County was at all times mentioned in plaintiff's petition, duly organized and existing as a drainage district under the laws of the State of Missouri and particularly article 4 of chapter 122 of the Revised Statutes of Missouri 1899.

"(3) That the lands described in the viewers' report as confirmed by the County Court of Dunklin County on September 7th, 1905, and as referred to in plaintiff's petition were included in the District when organized.

"(4) That C. H. Robards, W. T. Hildebrand and N. J. Wagster were the Judges of the County Court of Dunklin County on the date of the institution of this suit and that James M. Waltrip was the Presiding Judge, John W. Harris and Wylie M. Cole were associate Justices of the County Court of Dunklin County and P. C. Harrison was the County Clerk and Oscar C. Blakemore was County Treasurer of Dunklin County, Missouri, at the time of the organization of said district

and the issuing of the bonds sued on in this case and that said bonds were signed by the said last named County Judges, County Clerk and County Treasurer in their official capacity.

"(5) That R. H. Jones, et al., landowners within the District proposed to be organized and whose lands were liable to be affected or assessed for the construction of drainage improvements filed in the County Court of Dunklin County a petition setting forth the necessity for the drainage improvements proposed to be constructed with a general description of the proposed ditch, stating its beginning point, route and terminus and that it was desired to issue bonds to pay the cost of the proposed improvements and praying the Court to proceed to construct the improvements proposed.

"(6) That upon the filing of said petition, the Court appointed three resident free-holders qualified as required by statute as viewers and also appointed a civil engineer to assist them and ordered the viewers and engineer to view the line of the proposed ditch and to make their report as to whether the improvement was necessary, practical and would be conducive to the public health, convenience, and welfare and as to the best route and location of the ditch and as to whether the work of constructing the same should be by allotment to the contiguous owners or by contract without allotment and requiring said viewers and engineer to report their findings in writing to the Court.

"(7) That said viewers and engineer qualified and entered upon their duties and caused to be given the notice required by the statute and made and filed their report in the office of the Clerk of the County Court on September 7th, 1903.

"(8) That the County Court after hearing said report found and directed that the lands affected by the proposed improvement should constitute a drainage district and designated same as Drainage District No. 4 of Dunklin County, Missouri.

"(9) That the County Court on September 7th, 1903 entered its order directing the preliminary viewers to again examine the location of the ditch as set forth in the viewers' report and to make a survey and to do all things required and provided in section 8284, R.S.Mo.1899, including the filing of a report or schedule showing all lands and roads and railroads

that would be benefited or damaged by the improvement and the damage or benefit to each tract of forty acres or less.

"(10) That the final report of the viewers was filed with said County Court on June 2nd, 1905 and after the giving of notice as required by statute the same was heard and modified by the Court and as modified then confirmed by order of court entered the 27th day of September, 1905.

"(11) That on December 4th, 1905, contract was let for the construction of proposed improvements in said District; that subsequently on March 5th, 1905, the County Court, in order to provide funds to pay the cost of constructing said improvements, entered an order authorizing and directing the issuance of bonds on behalf of said District for the principal sum of $55,977.77.

"(12) That on January 1st, 1906, bonds herein sued on, together with other bonds aggregating the principal amount and sum of $55,977.77, having been previously authorized and directed to be issued to pay for the cost of said improvements, were issued, sold and delivered to the purchasers thereof, for the price and sum of $56,077.77 in the usual course of business and that the form of the bond and coupon is correctly set out in plaintiff's petition and that the photostatic copy of Bond No. 112 hereto attached, being the last bond issued, is identical in form and makeup of all other bonds issued, except as to the amount of the principal of the bond, it being for the sum of $477.77 instead of for $500.00. That all of said bonds were issued in conformity with the order of the County Court.

"(13) That said bonds are numbered from one to one hundred twelve inclusive and are dated January 1st, 1906 and bear interest at the rate of 6% per annum from the date thereof, payable annually on the first day of January of each year as evidenced by interest coupons attached. That all of said bonds are made payable to bearer, both as to principal and interest, at the office of the National Bank of Commerce in the City of New York in the State of New York.

"(14) That plaintiff is the owner and holder in due course of all bonds and coupons set forth in plaintiff's petition.

"(15) That there are no credits on any of said bonds or coupons and that defendants are entitled to no credits thereon.

"(16) That demand for payment of said bonds was made of the Treasurer of Dunklin County, Missouri at maturity of each of said bonds and coupons mentioned in plaintiff's petition and that payment was refused for the reason the Treasurer had no funds out of which to pay same and there are no funds in his hands now to pay same.

"(17) That bonds numbered 75 to 91 inclusive aggregating the principal sum of $8500.00 matured January 1st, 1922, and prior thereto and that this suit was filed December 30th, 1932.

"(18) That Drainage District No. 4 was organized under and by virtue of article 4 chapter 122 of the Revised Statutes of Missouri of 1899; that the lands contained in said Drainage District were duly and legally assessed and each and all of said landowners were duly and regularly notified of the assessment made by the viewers and engineer appointed by the county court under and by virtue of the authority in said statutes contained; that said Report was duly filed in the office of the Clerk of the County Court as required by law; that said Report of the viewers and engineer was by the County Court, in accordance with said statute, duly heard, approved and confirmed and the benefit assessments to each and every separate tract of said land were by the County Court under and by virtue of the authority contained in said chapter and Article as aforesaid, duly confirmed; that each and every of the annual taxes or special assessments heretofore levied against said benefit assessments and apportioned to each and every tract of land contained in said drainage district have been fully paid off by the holders of the title thereto."

■ 1. Defendants filed a motion to strike out plaintiff's amended petition on the ground that it was a departure from the original petition. The original petition prayed for a judgment against Dunklin County and drainage district No. 4 as a corporation. The amended petition sought a judgment against Dunklin County to be paid by a special assessment to be levied upon lands within drainage district No. 4.

After the original petition was filed, it was ascertained that the drainage district was not, under the law as it existed at the time of its organization, a corporation. Not being suable as an entity, the prayer was amended. The cause of action re-

mained the same. Amendment of a pleading by striking out the name of a party is expressly granted by statute in Missouri. 1929 R.S.Mo. § 819 (Mo.St.Ann. § 819, p. 1077). The federal statute is to the same effect. 28 U.S.C.A. § 777. Then the Supreme Court recently held "that at a trial upon the merits the suitor shall have the relief appropriate to the facts that he has pleaded, whether he has prayed for it or not." Bemis Bro. Bag Co. v. United States, 289 U.S. 28, 53 S.Ct. 454, 456, 77 L.Ed. 1011. The amendment made to the prayer for relief did not constitute a departure.

■ 2. Defendants have also filed a motion to dismiss, the substance of which is that the landowners to be affected by a special levy are not parties to this suit, and the county court ceased to be their representative when the last bond was due and payable on the first day of January, 1926. Defendants cite no authority in support of this position.

This motion will be considered with the case on the merits. The county court was the governing authority over this drainage district. It was not a separate entity as stated above. It had no officers. The entire control over the district was by the statute, under which it was organized, vested in the county court. The bonds were issued by Dunklin County. It is a novel notion that the responsibility of the county ceased when the last bond became due. The correct position is, in our opinion, that the responsibility of the issuing authority continued until its outstanding obligations were paid and satisfied.

This is the position taken by the court in State ex rel. Davidson, Collector, v. Missouri State Life Insurance Co., 228 Mo.App. 38, 65 S.W.(2d) 182, 187. A proposed drainage project in Dunklin County was abandoned when it was ascertained that the cost would be greater than the benefit. Three years later a tax was levied to defray the preliminary expense. The payment of the tax was resisted on the ground that the district had been dissolved, and was without authority to act. The court said: "The Legislature, by failing to provide a method of dissolution, as it did so provide under the chapter relating to Circuit Court Levee Districts (see section 10957, R.S.Mo.1929 [Mo.St.Ann. § 10957, p. 3633]), must have

intended to leave the corporation in existence for the purpose of permitting it to continue as a corporate body and liquidate its outstanding obligations. Such a district has no governing head or supervisors, but all the authority in connection therewith is vested in the county court. In order to pay the outstanding obligations of the district, proper action on the part of the county court was therefore necessary."

For the same reason the county court of Dunklin County is vested with authority to continue to act for district No. 4 until its outstanding obligations are paid. State ex. rel. Ross v. General American Life Insurance Company, 336 Mo. 829, 85 S.W. (2d) 68; Roswell Drainage District v. Parker (C.C.A.) 53 F.(2d) 793; Bates County, Missouri v. Wills et al., 269 F. 734 (C.C.A. 8).

■ The organization of drainage district No. 4 was effected under chapter 122, article 4 of the Revised Statutes of Missouri 1899 (section 8278 et seq.). The proceedings were in due form. Assessments on the land in the district were made and confirmed for the amount of $36,000. Bonds were issued in the amount of $55,977.77, which was in excess of the assessments made for the payment of the bonds. The error in issuing more bonds than levies to pay the same brought the failure and inability of the county to pay the bonds in suit.

The statute under which the district was organized was amended by an act approved March 27, 1913. Laws of Missouri 1913, pages 271 to 281. The amending act provided:

"Sec. 2. *Amendments Not to Affect Proceeding Now Pending.*—The repealing of the sections enumerated in section 1 of this act and the re-enacting of other sections in lieu of the sections repealed and the enacting of new sections in addition thereto shall not have the effect of abating, invalidating, suspending or vitiating any drainage district heretofore organized or any proceedings now pending in any of the courts of this state for the organization of any drainage district under the provisions of said article 4 of chapter 41 of the Revised Statutes of Missouri of 1909, prior to the passage of this act, but said drainage district or districts and proceedings may hereafter proceed under the provisions of this act. All contracts en-

tered into, all liens established and other obligations created, including warrants and bonds issued, by drainage districts heretofore organized under the provisions of said article 4 of chapter 41, are hereby declared to be valid, and the county courts shall levy sufficient tax to pay all such forms of indebtedness. The amendments contained in this act shall be deemed to be remedial in their character, shall be liberally construed by the courts and ·shall be construed to apply to all districts heretofore organized, as well as to the districts now in course of organization, or such as shall hereafter be organized under the provisions of article 4 of chapter 41 of the Revised Statutes of 1909, as hereby amended." Laws 1913, p. 281.

Article 4 of the Drainage Law, as amended by the above-mentioned act of 1913, was repealed by the act approved May 29, 1919. Laws of Missouri 1919, pages 294 to 321. This act provides, section 10808 of the Revised Statutes of 1929 (Mo.St.Ann. § 10808, p. 3529) : "Nor shall the repealing of existing laws have the effect of impairing, invalidating, discharging, changing, modifying or destroying any obligation, contract or undertaking, entered into by, or with any drainage district now organized and existing under any law in this state, but all such obligations, contracts and undertakings so entered into, shall be and remain inviolate. All rights, powers, liens and remedies now existing in behalf of any drainage district of this state, may be ·enforced and made available in the manner and by the means and mode now provided by law, or such rights, powers, liens and remedies may be enforced and made available under the provisions of this article, if applicable, at the election of the drainage district."

Both of these amendatory acts not only authorize but make it the duty of the governing authority of a drainage district to continue to function to the end that the integrity of the outstanding obligations be maintained. See opinion in Wills Case (Bates v. Wills), 239 F. 785 (C.C.A.) as modified, 245 F. 556 (C.C.A.).

The Supreme Court of Missouri has considered somewhat the same question that is now before this court. State ex. rel. Douglas v. Redman, 270 Mo. 465, 194 S. W. 260. When it was ascertained that the assessments had been made that there were less in amount than the bonds issued and sold, the county court by an order of April 29, 1912, at the instance of the bondholders, made an increased assessment. The landowners contested the increased assessment. The court held: (1) that the county court exhausted its power when it made the first assessment; (2) that by the amendment of 1913 the Legislature recognized that further authority to the county court was necessary for a reassessment; ▮ that the amendment was not retroactive and applicable to the case then before the court.

Defendants rest their case on the decision of the Supreme Court of Missouri in the Redman Case. It does not, in our opinion, determine the issue before this court.

The plaintiff relies upon the case of Bates County v. Wills (C.C.A.) 269 F. 734. This case was before the court several times: Id. (C.C.A.) 190 F. 522; Id. (C.C.A.) 200 F. 143; Id. (C.C.A.) 239 F. 785; Id. (C.C.A.) 245 F. 556. Our Circuit Court of Appeals in this case held that plaintiff, a contractor, who had done work for a drainage district, was entitled to a judgment against the county, to be paid by special assessment on the lands within the district. The last opinion in this case was subsequent to the decision in State ex. rel. v. Redman, supra. The court distinguished the two cases, stating in effect, that in the Redman Case the reassessment was made prior to the amendment of 1913, while in the Wills Case the reassessment was to be made subsequent to, and upon the authority of, the said amended law; and that the Redman Case did not hold that an additional levy could not be made after the amendment. That question was· not then before the court.

▮ The decision in the Wills Case is not in conflict with the construction of the Missouri statute by the state court. This court is obliged to follow it, and it rules this case. Moreover, it accords with right and justice. The bondholders furnished the funds; the district received the benefit. The duty to meet the obligation was recognized, and an attempt made by the county to discharge it. That duty remained unperformed. The plaintiff is entitled to the relief sought. .

▮ No mention has been made of a consideration that is entitled to great weight. This action against the county, the maker of the instruments sued upon, cannot fail because the means of satisfying the judg-

ment may not be available. The remedy exists though satisfaction may be denied.

Defendants' declaration of law denied, and an exception allowed.

The form of a judgment, accordingly may be tendered for approval, signature, and entry.