This is a suit for the collection of a preliminary uniform tax levied by the County Court of Dunklin County against lands of defendant, described in plaintiff's petition (and other lands) lying in Drainage District No. 41, Dunklin county. The case was decided below against defendant on a demurrer to plaintiff's petition and is here on appeal from the judgment overruling defendant's said *Page 40 
demurrer. It therefore becomes necessary to set out the petition which, caption omitted, reads, in part, as follows:
"The State of Missouri, who sues in this behalf, at the relation and to the use of A.L. Davidson, Collector of the revenue within and for said County of Dunklin and State of Missouri, for the use and benefit of Drainage District No. 41 of Dunklin County, Missouri, and A.L. Davidson, Treasurer and Ex-Officio Collector of Dunklin County, Missouri, for the use and benefit of Dunklin County, Missouri, states:
"That A.L. Davidson aforesaid is the duly elected commissioned and qualified treasurer and Ex-Officio collector of the revenue within and for the County and State aforesaid. . . .
"That Drainage District No. 41 of Dunklin County, Missouri, was duly organized by an order of the County Court of Dunklin County, Missouri, under and by virtue of Article 4, Chapter 28, Revised Statutes Missouri, for the year 1919, and amendments thereto, on the 19th day of August, 1927, at the July Term of the County Court of said County; said decree of incorporation being recorded in the Ditch Record of said County in Book 10 at page 213;
"That thereafter by an order duly made and entered of record in the County Court of said County on the 29th day of August, 1927, the County Court of said County made an order for the viewers and engineers to permanently locate the improvements in said districts; which said order is recorded in Ditch Record of Dunklin County, Missouri, in Book 10 at page 280;
"That thereafter and theretofore, the County Court of said County had allowed and expended fees properly allowed by law to the viewers and engineers of said district, attorney and other preliminary expenses in the organization of said district and preparation of the final report of the viewers and engineers therein the total sum of Thirteen Thousand Eight Hundred Twenty and 29/100 Dollars ($13,820.29); which said sum was paid out of the County Treasury upon allowance by the County Court under and by virtue of Section 10,861, Revised Statutes Missouri, 1929, and was charged to the account of Drainage District No. 41; and that no tax of any kind or character had theretofore been levied in Drainage District No. 41 for the purpose of paying said preliminary expenses.
"Plaintiffs further state that there has been collected under and by virtue of said tax as aforesaid, the sum of Five Thousand Nine Hundred Sixty and 46/100 Dollars ($5,960.46) leaving a net balance due by said drainage district to the general county funds of said county in the sum of Seven Thousand Eight Hundred Fifty-nine and 83/100 Dollars ($7,859.83).
"On the 25th day of November, 1929, the viewers and engineers of Drainage District No. 41 filed their final report in said district; *Page 41 
said report being recorded in Ditch Record of Dunklin County, Missouri in Book 11 at page 32;
"Thereafter, the Clerk was ordered by the County Court to give notice of the filing of said viewers and engineers report in said district, to-wit: on December 10, 1929, and the date for the hearing was set by order of the County Court duly made and entered of record at the time; thereafter, to-wit: on the 13th day of January, 1930, on the date set for the hearing upon the final report of the viewers and engineers, proof of publication of the notice of filing of viewers report in Drainage District No. 41 was duly filed with the Clerk of the County Court of said County, and on said date said cause was continued to March 17, 1930;
"Thereafter, to-wit: on March 17, 1930, the County Court of said County made an order disapproving and rejecting the final report of the viewers and engineers in said district, ordering and adjudging that said project and proceeding be dismissed for the reason that the cost for the same was in excess of the benefits to be derived therefrom thereafter, to-wit: on August 15, 1930, the County Court of said County by an order duly made and entered of record, at the time under and by virtue of Section 10815, Revised Statutes Missouri, 1929, ordered a uniform tax of thirty-five cents (35c) per acre upon each acre of land and other property within said district, for the purpose of paying expenses which were incurred in organizing said district, making surveys for the same and assessing benefits and damages and paying other expenses necessary in said district.
"Plaintiffs further state that thereafter the County Clerk of said County did extend a tax in accordance with said order against all the lands in said district in the same way and manner as provided by law for the collection of annual installments of drainage taxes under and by virtue of the chapter and article of the Revised Statutes of Missouri aforesaid.
"Plaintiffs state that the hereinafter described tract of land is owned by the defendant Missouri State Life Insurance Company, a corporation, and was so owned during all the times herein mentioned and is a part of the lands embraced in said Drainage District No. 41, Dunklin County, Missouri. . . . etc."
Then follows a prayer to enforce the lien of the taxes.
The demurrer is on three grounds, to-wit:
"1. That there is a misjoinder of parties plaintiff.
"2. That plaintiff, State ex rel. A.L. Davidson to the use of Drainage District No. 41 of Dunklin County, Missouri, has not the capacity to sue, and cannot, therefore, prosecute this cause.
"3. That the facts stated in plaintiffs' petition are not sufficient to constitute any cause of action against defendant and are not sufficient to support a lien on defendant's lands described in plaintiffs' petition as sought by plaintiffs." *Page 42 
Respondents frankly concede that points 1 and 2 of the demurrer are well taken for the reason that this being a suit to collect an alleged drainage district assessment, it is the sole province of the district to collect same and sue, "in the name of and to the use of the collector of the revenue. [Sec. 10828, R.S. 1929.] It would follow that the judgment should be reversed and the cause remanded on those two grounds. The vital question in the case, however, involves the third point raised by the demurrer, i.e., that the petition fails to state a cause of action. All parties concerned desire that that question be decided on this appeal not as a moot question but as the real point at issue. We shall therefore devote our attention to that question.
The material allegations of the petition are to be taken as true for the purposes of the demurrer. From the petition it appears that Drainage District No. 41 of Dunklin County was duly organized on the 19th day of August, 1927, by an order of the Dunklin County Court, as provided by Article 4, Revised Statutes 1919 (now Art, 2, Chap. 64, R.S. 1929). The county court is given authority to incorporate a drainage district under the provisions of Section 10809, Revised Statutes 1929, upon proper petition, after determining the same to be conducive to the public welfare. With the petition there must be filed a bond payable to the State of Missouri, signed by two or more good and sufficient freehold sureties and conditioned upon the payment of all costs and expenses if the prayer of the petition be not granted or the petition be dismissed. [Sec. 10810.] There is also a provision for the appointment of an attorney to assist in the establishment of the proposed district. [Sec. 10811.] Upon the filing of the petition and approval of the bond, the county court is required to appoint a competent civil and drainage engineer and three viewers. These viewers and engineer are required to view the location of the proposed ditch and premises adjacent thereto, and if they find the proposed improvement necessary and practicable, they shall so report and in their report shall indicate approximately the proper character, location and probable cost of the improvement, the lands benefited, the boundary lines of the proposed district, all in writing with maps and drawings necessary to advise the court in the premises. [Sec. 10812.] After the filing of this report the county clerk is required to give three weeks' notice of the hearing on the proposed improvement by publication. [Sec. 10813.] Remonstrances may be filed, heard and determined by the county court. If, after hearing all objections, the county court finds the landowners owning a majority in acreage of the proposed district are petitioners, the county court shall, or if less than a majority, may, in its discretion, find in favor of the improvement, in which event the petitioners and bondsmen are released from further liability on their bond. The county court shall thereupon incorporate the district by an order of record (which was done in this case). Such district thus becomes a body corporate and is *Page 43 
capable as such of suing and being sued. [Sec. 10814.] It is further provided that, "As soon as any district has been incorporated and established as hereinbefore provided, the court shall, by order entered of record, levy a uniform tax of not more than fifty cents per acre upon each acre of land and other property within the district, to be used for the purpose of paying expenses incurred or to be incurred in organizing said district, making surveys of the same and assessing benefits and damages and paying the other expenses necessary to be incurred before said court shall be empowered to levy taxes or issue bonds and thereby provide funds to pay the total cost of the improvements of the district. Said tax shall be due and payable as soon as assessed and shall become delinquent if not paid by December 31 of the year in which it has been levied. It shall become a lien on the land and other property against which it is levied and shall be collected in the same manner as the annual installment of the drainage tax. In case the sum received from such tax exceeds the total cost of items for which the same has been levied, the surplus shall be placed in the general fund of the district and used to pay cost of construction: Provided, that if the report of the viewers assessing benefits and damages to the property, as confirmed by the court, shows that any tract or tracts of land, on which such uniform tax has been paid, will not be benefited by the improvement, the County Court shall issue a warrant on the district fund in favor of such landowner or landowners to the amount of the uniform tax already paid. [R.S. 1919, sec. 4483.]" [Sec. 10815.] (Italics ours.)
The foregoing sections of the statute provide for all the preliminary work of organizing and locating a drainage district. Section 10861 provides that until the proceeds of taxes or bonds are available all fees under Article 2 shall be paid out of the county treasury when claims are allowed by the county court, and the general fund shall be reimbursed out of the money realized from the sale of bonds (provided for in other sections of the law) or the collection of taxes.
It may be presumed from the petition that all preliminary requirements of the state were properly met leading up to the time when the County Court of Dunklin County, in August, 1927, made the order organizing said district and thereby released the bondsmen from any liability for preliminary expenses and fees. After making the order incorporating the district the county court did not then levy the uniform tax provided for in Section 10815 (supra), "as soon as" the district was incorporated. Instead of then levying the uniform tax, the county court proceeded with the business of permanently organizing the district by directing the viewers and engineer to perform their duties in connection therewith as provided in Section 10816. This order was made August 29, 1927. On the 25th of November, 1929, the viewers and engineers filed their final report as provided by Section 10817. Thereupon the county clerk gave notice of the filing *Page 44 
of the final report as provided by law and the county court set the date of the final hearing for January 13, 1930. The cause was continued until March 17, 1930, at which time the county court made an order disapproving and rejecting the final report of the viewers and engineer and further ordered that said project and proceeding be dismissed for the reason that the costs of same were in excess of the benefits to be derived therefrom. No levy of any kind against the land lying in the district had been made at that time. On August 15, 1930, three years after the incorporation of the district, the county court made an order levying a uniform tax of thirty-five cents per acre upon each acre of land within said district, for the purpose of paying expenses incurred in organizing said district, making surveys of the same and assessing benefits and damages and paying other expenses in said district. It further appears from the petition that the county allowed and paid out the sum of $13,820.29 in payment of the preliminary expenses of said district and in preparation of the final report of the viewers and that since the levy of the uniform tax as above set forth, there has been collected the sum of $5,960.46, leaving a balance due the district in the sum of $7,859.83, of which amount, $16.21 was assessed against the lands of defendant in this suit.
As we understand appellant in this case its contention is that the petition failed to state facts sufficient to constitute a cause of action because (1) the county court failed to levy the uniform tax not to exceed fifty cents per acre "as soon as," the district was incorporated and that therefore its power to levy the uniform tax ceased and the attempt to levy the uniform tax three years after the incorporation was void; and that (2) since the county court, by its order of record of March 17, 1930, made upon the hearing of the second and final report of the viewers, dismissed all proceedings in connection with Drainage District No. 41, said order was final and the county court had no authority, especially after the term of court at which the final order was made had expired, to make any further orders in the matter.
As to the first proposition it is clear that the purpose of the statute was to provide immediately for the payment of the preliminary costs of organizing the district and a further fund for such other organizing expenses as might be incurred thereafter. This assessment was uniform against all lands in the district, was payable in a lump sum and became delinquent December 31st of the year in which the levy was made. It was a tax that had to be levied before any other drainage taxes could be levied or bonds issued against the district. [Sec. 10815, supra.] The statute of limitations against this tax would not begin to run until the levy was made and the tax had become delinquent and the five-year Statute of Limitation would apply. [Drainage *Page 45 
District No. 1 of Bates County v. Bates County, 269 Mo, 78, 189 S.W. 1176.]
It was held in the Bates case (supra) that the statute (Sec. 10828) providing that suits for drainage taxes shall be instituted within six months after December 31st, of the year for which such taxes were levied, was directory only and not a statute of limitation. It is also held that the fact that no drainage assessment book had been made as provided by law did not render the drainage tax uncollectible. [State ex rel. McBride v. Sheetz, 214 S.W. 376, 279 Mo. 429.]
These cases but illustrate the efficacy of the rule of construction of the drainage laws as laid down by the Legislature wherein it is declared that the drainage law is remedial in character and should be liberally construed by the courts. [Sec. 10864.] The article relative to county court drainage district is far from clear in many particulars. It is our opinion that the portion of Section 10815 requiring the county court to levy the uniform tax "as soon as" the district has been incorporated is directory in character and should be liberally construed. It is apparent that occasions might arise wherein the expense of the second survey and viewers report as provided by Section 10816 might be very great in comparison to the cost of the preliminary report and that the county court might be justified in withholding the levy of the uniform tax until after the second report should be filed, as was done in this case. Such action on the part of the county court would not seem to be unreasonable. It is also difficult to understand in what manner the delay in making the uniform levy in any manner worked a hardship or injustice upon the landowners in the district, although it might do so upon the taxpayers generally. Had the levy been made immediately upon the organization of the district the Statute of Limitations would not yet have run at the time this suit was instituted. Moreover, the expense of the viewers and engineer was incurred for the benefit of these particular landowners and not for the benefit of Dunklin county. Why then should the taxpayers of Dunklin county be compelled to pay that expense unless the law requires such an unjust interpretation? The county court, under the law, occupies a dual position in regard to this matter. It is in charge of the county business and also is in direct charge of the drainage district organized under this particular article of the statutes. Should that court, by mere inaction, be permitted to discriminate in favor of these particular landowners of the district and thus place an unjust burden upon the taxpayers generally of the county? We think the claim of the county for the amount expended by it in paying the preliminary expenses of organizing the district might become outlawed, but until the county's claim was outlawed, the authority to levy the uniform tax to reimburse the county remained vested in the county court. We consider this interpretation of the statutes reasonable, in harmony with the spirit of the law and fail to *Page 46 
perceive any hardship or injustice therein against the landowners for whose benefit the expense of organizing the district was incurred.
We are also of the opinion that the second point relied upon in support of the demurrer cannot be upheld. The theory is that the county court, by its order of March 17, 1930, by which it dismissed all proceedings, thereby lost the power to make any further orders regarding said district and that said district was thereby dissolved and no longer had the right to sue or be sued. The law provides no method for the dissolution of drainage districts organized under the county court law. No such power is vested in the county court. The sole power to dissolve such a district once formed would seem to lie with the Legislature. [19 C.J. 624.] In the case of State ex rel. W.T. Ray, Collector, v. Arcadia Timber Company, 274 Mo. 663, 204 S.W. 500, cited by appellant, it appears that in an original proceeding to establish a drainage district under the county court law, by misprision of the clerk a notice to landowners was directed to the Arcadia Realty Company instead of the correct name, The Arcadia Timber Company. The county court made an order incorporating the district in March, 1909. Valuable improvements were made, but the Arcadia Timber Company, not having been brought into court, had been held in a prior suit not to be liable for taxes and not affected by the judgment creating the district. Six years after the original judgment establishing the district the county court ordered a proper notice to be given the Arcadia Timber Company and proceeded to reaffirm the report of the viewers and engineer and reapportion the costs of the improvement. In regard to this procedure the Supreme Court held that: "The organization of the drainage district upon which the former suit was based, involved, as to all property owners therein except respondent, a complete assessment of the property within the district and a final judgment. [State ex rel. v. Redman, 194 S.W. 260; McQuitty v. Steckdaub, 190 S.W. 591, and cases cited; R.S. 1909, secs. 2097, 1971.]
"The complete organization of the district then established took place about six years before the institution of the present action. All the power of the county court to deal with that judgment or set it aside, was lost, in the absence of statutory authority, after the lapse of the term when the judgment was rendered. [Jeude v. Sims, 258 Mo. l.c. 39.] It could not, therefore, set aside the final judgment organizing the district under a proceeding instituted six years later and reopen and reorganize and reestablish the district.
"It necessarily follows that the proceeding instituted in the county court for that purpose was inapt and inefficacious. At any time before the final consummation of the proceeding which culminated in the original establishment of the drainage district, it would have been entirely within the province of the county court, as the tribunal clothed with authority under the statutes then in force, to have taken *Page 47 
proper steps to notify the respondent and make it a party to that original proceeding. It was, however, out of the power of that tribunal, under the facts stated in the petition in this cause, to have brought the respondent in as a party to a judicial proceeding which had ended in a final judgment at the term of court which had lapsed before the proceeding was instituted to make it a party." [State ex rel. Ray v. Arcadia Timber Co., 274 Mo. l.c. 669-670.]
It is urged by appellant that the rule laid down in the above case is controlling here and that when the county court of Dunklin county, on March 17, 1930, made an order dismissing all proceedings in connection with the Drainage District No. 41, that that order was final, and that especially after the term of court closed, the county court has no authority under the statute by which it is limited, to make any further orders in the matter. We are unable to agree with learned counsel for appellant, for whom he have the highest respect, in the conclusion that the county court had no authority under the statute to make any further orders in regard to the matter. In so far as it had adjudicated any matter properly before it the final judgment of the county court deprived it of the power to make any further order in regard to that particular matter. It could not alter or change its judgment in any particular after the term in which such judgment was rendered. Under the authorities it could not reopen the case, appoint new viewers or reverse itself on the matter of disapproving the final report of the viewers and engineer. The corporation was dead in so far as making the contemplated improvement was concerned. But we do not believe, as heretofore indicated, that the corporation was dissolved. The object of the Legislature in providing for the incorporation of drainage districts immediately after the report of the first viewers must have been for some particular reason. Otherwise we assume the law would have provided that the incorporation of the district should await the final action of the county court in approving the final report of the engineers and viewers. The object must have been to provide a convenient method of financing the project so as to relieve the petitioners, bondsmen and the county, in the event that it had paid the fees and expenses of organizing the district, and place the burden upon those directly benefited, the owners of the land. To carry out that purpose the corporation remained a legal entity. Had the county court made the order levying the uniform tax as soon as the district was incorporated, it would not be contended that the final order of the county court dismissing all proceedings in connection with Drainage District No. 41, would have the effect of dissolving the district so that the taxes so assessed could not be collected. The only bar would be the five-year Statute of Limitations. The Legislature, by failing to provide a method of dissolution, as it did so provide under the chapter relating to Circuit Court Levy Districts (see Sec. 10957, R.S. 1929), must have intended *Page 48 
to leave the corporation in existence for the purpose of permitting it to continue as a corporate body and liquidate its outstanding obligations. Such a district has no governing head or supervisors, but all the authority in connection therewith is vested in the county court. In order to pay the outstanding obligations of the district proper action on the part of the county court was therefore necessary. This action the county court took by its order made in August, 1930. The matter of assessing the amount necessary to pay the expense of organizing the district had never before been adjudicated and we think the county court had authority to make such an order under the statutes, notwithstanding the fact that the order was made three years after the incorporation of the district and after its order of March, 1930, dismissing the proceedings.
For the reasons heretofore indicated, however, the judgment must be reversed and the cause remanded. It is so ordered.Allen, P.J., and Smith, J., concur.
 ON MOTION FOR REHEARING.
BAILEY, J.
It is strongly urged that this court, in its original opinion, overlooked the fact that when the preliminary report of the viewers shall have been adopted, as provided by Section 10815, Revised Statutes 1929, heretofore set forth, and it then appears that any tracts of land on which the uniform tax shall have been assessed will not be benefited by the improvement, the county court shall thereupon issue a warrant on the district fund in favor of such landowner to the amount of the uniform tax already paid; and that under our ruling the owners of all tracts of land must pay the uniform tax without an opportunity to be heard or reimbursed and regardless of whether their lands may be benefited by the contemplated improvement or not. It is further urged that if the county court had levied the uniform tax "as soon as" the district was incorporated, then the owners of lands not benefited could have been heard and reimbursed for the uniform tax paid by them out of the funds of the district.
While the right to reimbursement is provided in Section 10815 (relating to the incorporation of the district) such right cannot be established until after the final report of the viewers has been filed and approved, and taxes levied for benefits assessed. Until such taxes are levied and collected the district would have no funds out of which any landowner might be reimbursed, except the uniform tax money which all landowners included in the district are required to pay. But the uniform tax money must first be used for reimbursing the county for the money advanced by it in paying the preliminary expenses. Even if the county court had levied the uniform tax "as soon as" it made the order incorporating the district, we perceive no way, under the facts in this case, by which the landowners not benefited *Page 49 
by the contemplated improvement could have been reimbursed as provided by Section 10815 (supra). There would have been no fund belonging to the district out of which such reimbursements could have been made, because the county court failed to adopt the final report of the viewers and engineer, but on the contrary dismissed the entire proceedings, or attempted to do so, and therefore made no levy of a tax for benefits assessed. As the project terminated in failure no landowner was benefited. In that respect all the landowners are in the same boat.
It is unfortunate that those landowners, if any, who could never have benefited from the improvement must pay a tax for expenses incurred for those who might have been benefited. It is also unfortunate that the law permits the original petitioners and their bondsmen to escape all liability after the county court once makes the order of incorporation. The County Court Drainage District Law fails to take care of that sort of a situation. This court, of course, cannot supply a hiatus in the law. We can only interpret the statute and give it the liberal construction the law itself specifies. This we have attempted to do in our original opinion and perceive no sound reason for departing therefrom. Allen, P.J., and Smith, J., concur.